243 P.3d 919 (2010)
SEATTLE TIMES COMPANY and Wm. Michael Hanbey, Petitioners,
v.
The Honorable Susan K. SERKO and the Honorable Bryan E. Chushcoff, Respondents.
Dewayne Darcus Allen, Ricky Hinton, Eddie Lee Davis, Douglas Davis, and Quiana Williams, Respondents/Intervenors.
No. 84691-0.
Supreme Court of Washington, En Banc.
Argued September 14, 2010.
Decided November 18, 2010.
*922 William Michael Hanbey, Attorney at Law, Olympia, WA, Bruce Edward Humble Johnson, Eric Stahl, Sarah Kathleen Duran, Davis Wright Tremaine LLP, Seattle, WA, for Petitioners.
Mary Katherine Young High, John Patrick O'Melveny, Philip Edward Thornton, Kirk T. `Chip' Mosley, Law Office of Kirk `Chip' Mosley, Kent W. Underwood, Office of Kent W. Underwood LLC, Tacoma, WA, Gregory Charles Link, Washington Appellate Project, Seattle, WA, James Kendrick Pharris, Office of the Attorney General, Olympia, WA, for Respondents.
Grace Helen Pierre-Whitener, Whitener Rainey Writt, PS, Tacoma, WA, for Defendant Latanya Clemmons.
Keith Alexander MacFie, Tacoma, WA, for Defendant Letricia Nelson.
Mark Evans Lindquist, Pierce County Prosecutor's Office, for Pierce County.
STEPHENS, J.
¶ 1 In this original action, the petitioners seek a writ of mandamus vacating two separate trial court orders, one that exempted from production under the Public Records Act (PRA), chapter 42.56 RCW, documents gathered during a criminal investigation and one that sealed trial exhibits generated during a subsequent criminal proceeding. Granting the writ, we vacate the orders.

BACKGROUND
¶ 2 On November 29, 2009, Maurice Clemmons shot and killed four Lakewood police officers at a coffee shop. A search for Clemmons followed, ending when an officer apprehended and fatally shot Clemmons during a routine patrol. A reporter for the Seattle Times (Times) made requests to the Pierce County Sheriff's Office (Sheriff) for various records held by the Sheriff related to the investigation of the shootings. About the same time, the Sheriff received records requests from others, including attorney Wm. Michael Hanbey. The Sheriff identified 43 categories of police records responsive to the requests, consisting of incident reports from the Sheriff and other investigative agencies; communications between various agencies; witness statements; transcripts of recorded interviews; reports from the Bureau of Alcohol, Tobacco, and Firearms; and surveillance and other photographs. The Sheriff intended to release these records to the requesters, but in March 2010 alleged accomplices of Clemmons, then defendants in pending criminal proceedings, brought motions to enjoin the release of the documents.
¶ 3 The defendants sought to enjoin the Sheriff from producing "any and all" records responsive to the PRA requests. Clerk's Papers (CP) at 6. Relying on a provision of the PRA that allows a party named or referred to in a public record to seek to enjoin its release, RCW 42.56.540, they claimed the records were exempt under the PRA and that production would impair their right to a fair trial. The Times opposed the motions.
¶ 4 Judge Stephanie Arend of the Pierce County Superior Court initially ruled that pursuant to RCW 42.56.540, the defendants needed to bring their PRA objections in a separate declaratory action. She reconsidered her decision, however, on the ground that some of the defendants could not secure funding or an attorney to institute a civil action. Judge Arend ordered the Sheriff to submit the records at issue for a consolidated in camera review by a Pierce County judicial officer in order to determine whether any of *923 the documents were exempt from production under the PRA and if the release of any documents not exempted would impair the defendants' right to a fair trial.
¶ 5 Judge Susan Serko conducted the in camera review and issued an order in the criminal matters on May 20, 2010 (May 20 order). The May 20 order concluded that all the objected-to documents were exempt from production under the PRA pursuant to RCW 42.56.540, which Judge Serko believed allowed for exemption based on a judicial finding that the defendants' fair trial rights would be impaired by production. Subsequent objections to the ruling were treated as a motion to reconsider, which was denied on June 7, 2010.
¶ 6 Meanwhile, on May 17, 2010, trial began in the case of Latanya Clemmons, one of Clemmons's alleged accomplices. Numerous spectators, including news reporters, attended the trial. Television cameras were permitted and recorded testimony was broadcast. Trial exhibits admitted into evidence in open court were discussed in the media. Some of these trial exhibits included records that were held to be exempt from production under the PRA pursuant to the May 20 order.
¶ 7 On June 9, 2010, the evidentiary portion of the Latanya Clemmons trial was completed. On that same day, counsel for alleged accomplice Eddie Davis moved ex parte for an order to seal all the trial exhibits from Latanya Clemmons's trial, citing the May 20 order in support. Judge Bryan Chushcoff entered a temporary order sealing all exhibits marked or admitted, and set a hearing on the merits of the motion for June 25, 2010 (June 9 order). On June 25, Judge Arend extended the ex parte sealing order with modifications, pending a hearing date of July 14, 2010.[1]
¶ 8 On July 9, 2010, this court retained the Times's petition for writ of mandamus and granted expedited review. We also allowed the defendants to intervene in the petition as respondents, and we allowed attorney Wm. Michael Hanbey to join the petition. Our order stated that the hearing scheduled for July 14, 2010 could go forward.
¶ 9 At the July 14, 2010 hearing, Judge Arend unsealed 32 exhibits from Latanya Clemmons' trial, only two of which were among the records exempted from production under Judge Serko's May 20 order. Judge Arend ordered four exhibits not reviewed by Judge Serko to remain sealed because they were unresponsive to the PRA requests. She reserved decision on the 21 trial exhibits that were reviewed in camera by Judge Serko and are the subject of the May 20 order. Judge Arend stayed her order pending alleged accomplice Darcus Allen's decision to seek a sealing order from the judge presiding over his criminal case, in part because Allen was not represented at the July 14, 2010 hearing. She issued a written order on July 16, 2010, which on its face appears to apply to all the defendants, including Allen.
¶ 10 On July 22, 2010 Allen filed a motion with Judge Frederick Fleming requesting that many of the exhibits from the Latanya Clemmons trial remain sealed, including those that had been admitted at trial and that Judge Arend had unsealed on June 25, 2010. A hearing on that motion was scheduled for August 3, 2010. On that date, Judge Fleming ruled that he did not have jurisdiction to decide matters pertaining to the sealing, presumably as a result of this court's retention of the petition for writ of mandamus. He issued a written order to that effect on August 20, 2010.
¶ 11 Notwithstanding the numerous orders described above, what is at issue here can be traced to the May 20 PRA order and the June 9 sealing order as modified by the June 25 order, with the result that most of the exhibits from Latanya Clemmons's trial remain sealed, and the records responsive to the petitioners' records request remain exempted from production under the PRA. *924 This court is therefore asked to review, through the writ process, the propriety of the May 20 and June 9 orders exempting from production, and sealing, the records in question.

ANALYSIS
¶ 12 Before considering the propriety of the orders themselves, we consider whether a writ of mandamus is the appropriate avenue for relief in this matter. Concluding that it is, we then review the legal grounds upon which the orders in question are based.

Is a petition for a writ of mandamus the appropriate vehicle for the petitioners' contentions?
¶ 13 Though we retained the Times's petition for a writ of mandamus, the question remains whether a writ is the appropriate vehicle to address the petitioners' contentions. Rule of Appellate Procedure (RAP) 16.2 allows a party to file an original action in this court. But it is an extraordinary remedy. Walker v. Munro, 124 Wash.2d 402, 407, 879 P.2d 920 (1994). A party seeking a writ of mandamus must show that (1) the party subject to the writ has a clear duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested. RCW 7.16.160,.170. The duty to act must be ministerial in nature rather than discretionary. Brown v. Owen, 165 Wash.2d 706, 725, 206 P.3d 310 (2009).
¶ 14 Admittedly, this mandamus petition is somewhat unusual. However, we have encouraged use of the writ in circumstances such as these. In State v. Bianchi, 92 Wash.2d 91, 92, 593 P.2d 1330 (1979), The Bellingham Herald (The Herald) sought to intervene in a high-profile murder case in order to contest the trial court's order sealing the affidavit of probable cause determination, an order jointly sought by the prosecution and the defense. The trial court allowed The Herald to intervene. We reversed, holding that "there is no rule, statute, or precedent in this state that would allow a third party to intervene in a criminal proceeding." Id. at 92, 593 P.2d 1330. We observed that "the Herald has no direct interest in this determination to justify its intervention and the disruption of the pending criminal proceedings inherent in the intervention process. The Herald's remedy must therefore lie in a separate action for declaratory judgment, mandamus, or prohibition." Id. at 92-93, 593 P.2d 1330.
¶ 15 The Times points out that a declaratory judgment may not be available here, where the challenges to the production and unsealing of the documents in question occurred in criminal proceedings, not subject to the civil rules. See Civil Rule (CR) 57 (governing declaratory judgments); Reply on Pet. for Writ of Mandamus at 7 n. 3. Moreover, the Sheriff has not opposed disclosure of the requested records, so there is no dispute here between the parties seeking the information and the agency holding the information, as there has been in other cases where a media requester filed a declaratory judgment to resolve a records dispute. See, e.g., Yakima Herald Republic v. Yakima County, No. 82229-8 (Wash. argued Mar. 9, 2010); Newman v. King County, 133 Wash.2d 565, 947 P.2d 712 (1997). Direct appeal is also unavailable to the petitioners as a meaningful vehicle for review, both because of their inability to intervene in the criminal matters and because of the delay necessarily involved. See State v. Coe, 101 Wash.2d 364, 372 n. 2, 679 P.2d 353 (1984) (noting that such review may be delayed until "most of the news value of [publishing the material] would have disappeared").
¶ 16 Since Bianchi we have affirmed the use of a writ of mandamus for a third party seeking the disclosure of information that potentially impacts a criminal trial. Federated Publ'ns, Inc. v. Kurtz, 94 Wash.2d 51, 615 P.2d 440 (1980); Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982). "Mandamus by an original action in this court is a proper form of action for third party challenges to closure orders in criminal proceedings." Ishikawa, 97 Wash.2d at 35, 640 P.2d 716. Both Ishikawa and Kurtz involved courtroom closures and sealed court files. It is argued that the case before us is not entirely on point with Ishikawa and Kurtz because although some of the records *925 at issue here were sealed under the June 9 order, and thus implicate article I, section 10 of the state constitution, the May 20 order withheld the records under the PRA, which does not directly implicate article I, section 10. Judges' Resp. to Pet. for Writ of Mandamus and Mot. for Accelerated Review at 6.
¶ 17 But this case is unusual in that the PRA issue was resolved in the context of the pending criminal cases, and the requesting parties could not intervene under Bianchi. We have consistently recognized the importance of the PRA in assuring open government. "The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter [the PRA] shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected." RCW 42.56.030. It would undermine this policy if those prejudiced by an order prohibiting disclosure under the PRA had no timely means of seeking review. Bianchi and Ishikawa contemplate the procedural avenue the petitioners have followed in this case.[2] We will therefore review the petitioners' writ request on its merits.

Was the May 20 order proper?
¶ 18 In order to prevail in a challenge to the production of records under the PRA, a party must establish a specific exemption that bars production of the requested records. RCW 42.56.070(1); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 251, 884 P.2d 592 (1994) (PAWS II). As noted, the PRA reflects a strong public policy favoring the disclosure and production of information, and exemptions are to be narrowly construed. RCW 42.56.030. Moreover, a party opposing the production of public records must establish that production would "clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." RCW 42.56.540; see Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 756-57, 174 P.3d 60 (2007).
¶ 19 Judge Serko identified RCW 42.56.540 as the relevant exemption allowing her to enjoin production of the requested records under the PRA, premised on a concern for the respondents' fair trial rights. Respondents offer two additional exemptionsaddressing work product and investigative records. We begin our analysis with those exemptions.

1. Work Product
¶ 20 The respondents argue that the records at issue were properly withheld because they are work product exempted by the PRA. Judge Serko concluded the exemption did not apply. We agree. The PRA work product exemption states:
Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt from disclosure under this chapter.
RCW 42.56.290. The respondents acknowledge that no records requests have been made to the prosecutor, but argue that "police are merely the investigatory arm of the prosecutor." Br. of Resp't Darcus Allen (Br. of Resp't) at 22 (citing Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). But the holding in Kyles is narrower than the respondents suggest. Kyles concluded that a prosecutor could not avoid the duty to disclose exculpatory evidence by claiming the police did not give him the information, because the prosecutor was in a position to create adequate procedures ensuring the flow of information between the two entities. 514 U.S. at 437-38, 115 S.Ct. 1555. Kyles cannot be read as collapsing a law enforcement agency and a prosecutor's office into indistinguishable agencies.
*926 ¶ 21 The respondents next argue that work product is not limited to material generated by the attorney, but includes material prepared on behalf of the attorney by an investigator. Br. of Resp't at 23 (citing Soter v. Cowles Publ'g Co., 131 Wash.App. 882, 894, 130 P.3d 840 (2006), aff'd, 162 Wash.2d 716, 174 P.3d 60). But in Soter, a newspaper sought records generated by a private investigator hired by a school district's attorney. Soter, 131 Wash.App. at 890, 130 P.3d 840. This case provides no authority for the respondents' contention that an investigator from a law enforcement agency is merely an arm of the prosecutor's office for purposes of a work product analysis.

2. Investigative Records Exemption
¶ 22 The respondents next claim that the documents at issue were properly withheld because they are not subject to production under the PRA exemption for investigative records. That exemption reads in relevant part:
The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
(1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
RCW 42.56.240. The application of the investigative records exemption requires that the records in question be compiled by law enforcement and that they be essential to effective law enforcement. Newman, 133 Wash.2d at 572, 947 P.2d 712. Records are essential to effective law enforcement if the investigation is leading toward an enforcement proceeding. Id. at 573, 947 P.2d 712.
In determining if an investigation is leading toward an enforcement proceeding, the federal courts examine (1) "affidavits by people with direct knowledge of and responsibility for the investigation ..."; (2) whether resources are allocated to the investigation; and (3) whether enforcement proceedings are contemplated.
Id. (alteration in original) (quoting Dickerson v. Dep't of Justice, 992 F.2d 1426, 1431-32 (6th Cir.1993)). When an investigation is ongoing, the investigative records exemption provides a blanket exemption. In Newman, we explained that a "cold case" murder where no suspect had yet been identified was an open investigation. Id. at 568-69, 575, 947 P.2d 712. We found in part that because the investigation was open, disclosure of information under the PRA would compromise effective law enforcement, thereby triggering the investigative records exemption to the PRA. Id. at 574, 947 P.2d 712. Such an exemption was necessarily categorical in that instance because the decision as to what information may or may not compromise an open investigation is best left to law enforcement, rather than a court reviewing records in camera. Id.
¶ 23 This all-or-nothing approach was later limited in Cowles Publishing Co. v. Spokane Police Department, 139 Wash.2d 472, 477-78, 987 P.2d 620 (1999), in which a newspaper requested information related to a crime for which an individual had been arrested and the matter referred to the prosecutor for a charging decision. Because the matter was before the prosecutor for a charging decision, "the risk of inadvertently disclosing sensitive information that might impede apprehension of the perpetrator no longer exists." Id. We therefore held that "in cases where the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure of all records in the police investigative file." Id. at 479, 987 P.2d 620 (emphasis added). Instead, application of the exemption requires a record-by-record analysis, with the requested records subject to in camera review by the court. Id. at 479-80, 987 P.2d 620.
¶ 24 There is no question here that the prosecutor has made his charging decisions with respect to the respondents, and that the investigation into the murders of the Lakewood officers and subsequent events is *927 no longer ongoing. To that extent, this case is outside the realm of Newman and is on point with Cowles, 139 Wash.2d 472, 987 P.2d 620. Judge Serko's findings did not consider Cowles and mentioned only Newman. Moreover, Judge Serko did not base her decision to withhold the records at issue on the investigative records exemption. Thus, we lack the necessary record to make a determination as to whether any of the requested records should be exempted on this basis.[3]

3. Exemption under RCW 42.56.540 for Fair Trial Rights
¶ 25 Judge Serko found that because of the "extraordinary level of local, state and national attention" the story of the Lakewood murders and subsequent events received, "further release of investigative materials and details may jeopardize" the respondents' ability to seat a fair and impartial jury. CP at 268. A defendant has a right to fair trial under the Sixth and Fourteenth Amendments to the federal constitution, and under article I, section 22 of our state constitution. There is no specific exemption under the PRA that mentions the protection of an individual's constitutional fair trial rights, but courts have an independent obligation to secure such rights. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (stating that "[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity"). Judge Serko viewed RCW 42.56.540 as a basis under the PRA for withholding records alleged to violate the respondents' fair trial rights.
¶ 26 RCW 42.56.540 reads in relevant part:
The examination of any specific public record may be enjoined if, upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.
¶ 27 The respondents claim that the disclosure of the requested records will result in media coverage that may taint a future jury pool. See Br. of Resp't at 9. Their claim is therefore analogous to a motion for a change of venue due to pretrial publicity. In that context, we have recognized that the "`defendant must show a probability of unfairness or prejudice from pretrial publicity.'" State v. Jackson, 150 Wash.2d 251, 269, 76 P.3d 217 (2003) (quoting State v. Hoffman, 116 Wash.2d 51, 71, 804 P.2d 577 (1991)). Moreover, as this court observed in a case involving a challenge to a trial court's "gag order" on publicity, trial courts considering suppression of publicity should also inquire as to the availability of alternatives to the suppression of publicity, including more searching voir dire, clear and emphatic cautionary instructions, a change of venue, continuance of the trial date, and sequestration of the jury. State v. Bassett, 128 Wash.2d 612, 616-17, 911 P.2d 385 (1996). Thus, a trial court that orders the withholding of public records based on protecting a fair trial right must find with particularity that it is more probable than not that unfairness or prejudice will result from the pretrial disclosure, and must consider alternatives to *928 withholding the records.[4] In applying this standard, "a defendant's constitutional right to a fair trial [does not] compel categorical nondisclosure of police investigative records." Cowles, 139 Wash.2d at 479, 987 P.2d 620. Application of the standard should be done as to each record requested, with the trial court conducting an in camera review.
¶ 28 In light of the foregoing discussion, we must conclude that Judge Serko's May 20 order cannot stand. First, the order does not identify with particularity the unfairness or prejudice that would result from release of the records at issue, nor does the order consider alternatives to the suppression of public records. Second, the order relies on RCW 42.56.540, but this statute does not provide a stand-alone exemption to production under the PRA. It "is simply an injunction statute. It is a procedural provision which allows a superior court to enjoin the release of specific public records if they fall within specific exemptions found elsewhere in the Act." PAWS II, 125 Wash.2d at 257, 884 P.2d 592 (discussing predecessor statute codified as RCW 42.17.330).
¶ 29 The respondents attempt to recast the significance of RCW 42.56.540 by arguing that the May 20 order properly relied on the provision in barring production of the documents because the prosecutor "failed to assert available exemptions despite his constitutional and ethical obligations" to do so. Br. of Resp't at 24. We disagree. The petitioners did not request any documents from the prosecutor, only from the Sheriff.[5] Even if the prosecutor's office was the agency to which this request for records had been made, there is no support for the argument that it has an obligation under the PRA to claim exemptions to production. Indeed, such a requirement would run counter to the PRA's policy of openness, as evinced by its mandate that exemptions be narrowly construed. See RCW 42.56.030.
¶ 30 In sum, Judge Serko's May 20 order is not supportable under the appropriate standard relating to any of the claimed exemptions or based on a violation of the respondents' fair trial rights. Moreover, the stated basis for the order, RCW 42.56.540, is not a substantive provision of the PRA, but a procedural one that cannot stand alone. Accordingly, we must vacate the May 20 order.

Was the sealing order of June 9 proper?
¶ 31 Unlike the May 20 order, which concluded that documents requested from the Sheriff were exempt from production under the PRA, the June 9 order (as modified by the June 25 order) sealed records that had previously been marked or entered as exhibits in a public trial. We review a trial court's sealing order for abuse of discretion. Rufer v. Abbott Labs., 154 Wash.2d 530, 540, 114 P.3d 1182 (2005). We start "with the presumption of openness" based on our state constitution's mandate that "`[j]ustice in all cases shall be administered openly, and without unnecessary delay.'" Id. (alteration in original) (quoting WASH. CONST. art. I, § 10).
¶ 32 In keeping with our state constitution's mandate for open justice, court rules require a hearing before court records are sealed or redacted, and this procedure was not followed before entering the ex parte sealing order. GR 15(c)(1). We recognize that a hearing on the merits was contemplated in the ex parte order, but it does not *929 appear from the record that the necessary hearing ever occurred. Even assuming that the July 14 hearing, at which respondent Darcus Allen was not represented, was the anticipated GR 15 hearing, the order entered after this hearing was constitutionally inadequate to justify the sealing of court records. The sealing of court records in this instance constituted a court closure to the extent it removed from public access documents marked as exhibits or admitted into open court. Rufer, 154 Wash.2d at 549, 114 P.3d 1182. In order to make such a closure, the trial court was required to engage in an on-the-record analysis of the factors outlined in Ishikawa and to set forth findings supporting a determination "that there is a compelling interest which overrides the public's right to the open administration of justice." Id.[6] The June 9 order lacks any discussion of Ishikawa. Accordingly, it must be vacated.

CONCLUSION
¶ 33 We hereby grant the petitioners' request for a writ of mandamus. In granting this writ, we do not intend to minimize the efforts of the trial judges involved in this matter to give careful consideration to the competing claims of openness and fairness. Instead, our task is to identify as clearly as possible what the law requires. Because the orders at issue do not comply with the strictures of the PRA, court rules, and case law, they must be vacated.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and JAMES M. JOHNSON, Justices.
NOTES
[1] At the June 25, 2010 hearing, Judge Arend unsealed exhibits admitted at the Latanya Clemmons trial that were not among the records referred to in Judge Serko's May 20 order, as well as exhibits to which defense counsel had no objections. All other exhibits remained sealed under the temporary order. The affected exhibits are listed in a follow-up June 30, 2010 order signed by Judge Ronald Culpepper.
[2] Recently, questions have arisen about the wisdom of Bianchi. See State v. Mendez, 157 Wash. App. 565, 574-78, 238 P.3d 517 (2010). We decline to consider such concerns at this time because the petitioners here acted consistently with Ishikawa in bringing this action as a writ of mandamus. Nor has any party asked us to reconsider Bianchi. We note, however, that other jurisdictions allow direct intervention in criminal cases for the purpose of gathering information. See, e.g., In re Associated Press, 162 F.3d 503, 507-08 (7th Cir.1998).
[3] One piece of Judge Serko's analysis on the investigative records exemption requires further discussion, however, and that has to do with whether a pending decision to convert the case of Darcus Allen to a capital prosecution qualifies as an ongoing investigation. Judge Serko concluded that it does. CP at 266. At least one court has held that death penalty mitigation material is exempt from production under the investigative records exemption. Cowles Publ'g Co. v. Pierce County Prosecutor's Office [& Robert Yates], 111 Wash.App. 502, 45 P.3d 620 (2002) (Yates). But Yates is distinguishable because here the petitioners did not include mitigation material as part of their records request. Id. at 505, 45 P.3d 620; Reply Br. of Pet'r Seattle Times at 16 (citing CP at 11-12). Though Judge Serko did not appear to base her nonproduction ruling on the investigative records exemption, CP at 266, she commented that the pending decision to seek the death penalty against Allen created an exemption for the materials requested. Given the scope of the records request at issue, this conclusion cannot stand.
[4] Other jurisdictions that have reviewed questions involving the tension between a public records request and a defendant's fair trial rights have adopted a similar "probable prejudice" standard. For example, a court reviewing a Freedom of Information Act (FOIA) request requires a party claiming FOIA's fair trial exemption to show "that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." Washington Post Co. v. United States Dep't of Justice, 274 U.S.App. D.C. 190, 863 F.2d 96, 102 (1988). Conclusory statements are not enough. Id. at 101. Other courts have recognized the need for "particularized reasons articulated on the record." State News v. Mich. State Univ., 274 Mich.App. 558, 735 N.W.2d 649, 660 (2007), rev'd in part on other grounds, 481 Mich. 692, 753 N.W.2d 20 (2008).
[5] The Times maintains it never requested records from the prosecutor. Reply Br. of Pet'r Seattle Times at 18. Hanbey appears to have initially requested records from the prosecutor, but his motion to intervene in the case below was premised on his interest in records he requested from law enforcement. Br. of Pet'r Hanbey at 2-3.
[6] Under Ishikawa, the relevant factors for sealing are (1) need, as shown by the proponent; (2) the opportunity afforded to those present when a sealing motion is made to object to the suggested restriction; (3) whether sealing is both the least restrictive means available and effective in protecting the interests threatened; (4) a weighing of the competing interests of the parties and the public; and (5) whether the sealing order is no broader in its application or duration than necessary to serve its purpose. 97 Wash.2d at 37-39, 640 P.2d 716.