## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 8, 2022

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 8, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION, on behalf of its Washington-licensed members, | ) ) ) | No. 100095-2 |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MIKE KREIDLER, the elected Insurance Commissioner for the State of Washington, | ) ) ) | |
| | ) | |
| Respondent. | ) | Filed: December 8, 2022 |
| _____ | ) | |

MADSEN, J.—Pursuant to RCW 48.04.010(5), American Property Casualty Insurance Association (Association) requested an adjudicative hearing before an administrative law judge (ALJ) rather than the insurance agency's in-house presiding officer. The request was denied. The Association now seeks a writ of mandamus against Insurance Commissioner Mike Kreidler, requiring him to transfer the hearing.

The Association could have sought judicial review by way of the Administrative Procedure Act (APA), ch. 34.05 RCW, thus, the Association fails to demonstrate it has "no plain, speedy, and adequate remedy" at law, one of the three requirements for a writ

No. 100095-2

to issue. *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010); RCW 7.16.170, .360. Accordingly, we dismiss the petition.

BACKGROUND

The material facts of this case are undisputed. On June 25, 2021, Commissioner Kreidler issued a data call to 123 property and casualty insurers operating in this state. The call asked for claim information on private passenger automobile insurance coverage provided from 2016 to 2020: details on refunds, credit, or reductions provided to policyholders in 2020 relating to COVID-19 (Coronavirus disease 2019), and certain quarterly financial data. Commissioner Kreidler noted that the call was different from previous requests because the responsive information would be public and nonconfidential. The due date for the information was set for July 30, 2021.

On July 16, 2021, the Association objected to the data call and demanded an administrative hearing on behalf of its Washington members. The demand letter alleged that the commissioner's data call exceeded his statutory and regulatory authority, and was therefore invalid. The Association also asserted that the data call and the enforcement action against Association members were automatically stayed under RCW 48.04.010(1), and it invoked RCW 48.04.010(1)(b) and (5) to request a hearing before an ALJ.

On July 19, the Office of the Insurance Commissioner's (OIC) hearing unit confirmed by e-mail that it had received the hearing demand and informed the parties that a stay of the data call was in place. That same day, one of the Association's attorneys contacted the insurance commissioner's designee, Presiding Officer Julia Eisentrout,

2

asking if the matter would be transferred to an ALJ. The presiding officer responded, also via e-mail, that transfer to an ALJ was not required under RCW 48.04.010(5) and (6), and that the OIC's policy was to transfer matters potentially affecting the status of a license to an ALJ but to retain for internal resolution all other matters. Because Association members were not issued OIC licenses, the proceeding would not be transferred.

The next day, July 20, the OIC attorney assigned to the matter e-mailed the parties and the presiding officer, addressing whether the Association members were "licensees," disagreeing that an automatic stay applied, and questioning whether the Association had standing. The OIC attorney asked for the opportunity to brief the issues. Association lawyers immediately stated that the OIC attorney had engaged in premature briefing without leave and declined to answer. The presiding officer explained to the parties on July 21 that the matter would remain within the OIC and that she did not believe the OIC was "precluded from objecting to the stay or raising the issue regarding [Association] members." Clerk's Papers at 48.

Before the presiding officer weighed in on OIC's standing concerns, the Association filed for reconsideration of the e-mail ruling or, in the alternative, a stay of proceedings pending appeal to superior court. On August 12, 2021, the presiding officer denied both, concluding in a written order that the presiding officer's decision to deny transfer to an ALJ was not a final order and reconsideration was not available, and that Association member insurers were not "licensees," and thus were not entitled to an ALJ

hearing. The denial of the stay to seek review in superior court did not affect the stay of the data call, which remained in place—staying the deadlines to respond for Association members and preventing publication of any information provided to the OIC from members under the call.

In response, the Association filed the instant petition for a writ of mandamus against the insurance commissioner, seeking to compel him to transfer the hearing to an ALJ pursuant to RCW 48.04.010(5). Commissioner Michael Johnston extended the stay of the administrative proceeding, retained the Association's petition, and referred it to this court for resolution on the merits.

## ANALYSIS

The Association filed for a writ of mandamus requiring the insurance commissioner to transfer its members' hearing to an ALJ. We must determine whether the Association meets the "'demanding'" elements justifying mandamus. *Eugster v. City of Spokane*, 118 Wn. App. 383, 403, 76 P.3d 741 (2003) (quoting *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 309, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989)).

This court has original jurisdiction over and the power to issue certain writs such as habeas corpus, quo warranto, and mandamus for all state officers. WASH. CONST. art. IV, § 4; *see also* RCW 7.16.150-.280 (statutory authority to issue writs of mandamus); RAP 16.2. The elected insurance commissioner is a state officer. *State ex rel. N. Coast Fire Ins. Co. v. Schively*, 68 Wash. 148, 149-50, 122 P. 1020 (1912).

As we have long recognized, a writ of mandamus is "a rare and extraordinary remedy." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020) (citing *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994)). To obtain a writ of mandamus, the petitioner must demonstrate that (1) the party subject to the writ has a clear duty to act, (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law, and (3) the petitioner is beneficially interested. *Seattle Times*, 170 Wn.2d at 588-89. Even upon satisfying these requirements, a party is not entitled to a writ of mandamus. This is because our jurisdiction to issue such a writ is nonexclusive and discretionary. *Walker*, 124 Wn.2d at 407. Because the Association fails to show that it lacks a plain, speedy, and adequate remedy at law, we dismiss the petition.

In determining whether a plain, speedy, and adequate remedy exists, we rely on the facts of the particular case. *State ex rel. O'Brien v. Police Ct.*, 14 Wn.2d 340, 348, 128 P.2d 332 (1942). A remedy is not inadequate "merely because it is attended with delay, expense, annoyance, or even some hardship." *Id.* at 347-48. Instead, there must be something in the nature of the action that makes it apparent that the rights of the litigants will not be protected or full redress will not be afforded without the writ. *Id.* at 348.

The insurance code allows an aggrieved person to demand an adjudicative hearing presided over by the commissioner or the commissioner's designee. RCW 48.02.060(3)(c); RCW 48.04.010(1); RCW 34.05.425(1)(a), (b). As noted, a "licensee" under the code may request that the hearing be presided over by an ALJ. RCW

No. 100095-2

48.04.010(5). When the hearing is presided over by an ALJ, the APA directs an ALJ to enter an *initial* order that the agency's presiding officer reviews; only the presiding officer can issue a *final* order. RCW 34.05.464(1), (2), .461(1)(c). A final order, along with any other order issued during the hearing that has substantially prejudiced the entity seeking review, is subject to judicial review in superior court. RCW 34.05.570(3).

One of the purposes of the APA is to ensure consistency in the rule-making and adjudicative process. *See* William R. Andersen, *The 1988 Washington Administrative Procedures Act—An Introduction*, 64 WASH. L. REV. 781, 783-84, 840 (1989). That is, consistency with other states, with the federal administrative procedure act, and across Washington State agencies. *Id*. at 783, 809. Agency adjudications are intended to be efficient and fair processes. *See id.* at 805. With limited exceptions that do not apply here, the APA "establishes the exclusive means of judicial review of agency action." RCW 34.05.510. "Agency action" means, among other things, "adoption or application of an agency rule or order." RCW 34.05.010(3). The APA provides numerous types of relief to a reviewing court, including ordering an agency to take an action required by law, setting aside agency action, or entering a declaratory judgment order. RCW 34.05.574(1)(b). The statutory writ of mandamus "does not apply to state agency action reviewable under chapter 34.05 RCW [the APA]." RCW 7.16.360.

Pursuant to the APA, an aggrieved party may seek judicial review of agency action. After the presiding officer enters a final order, the aggrieved party may appeal both the decision on its underlying claim, here, that Commissioner Kreidler's data call

6

exceeded his statutory authority, and the ruling denying transfer of the matter to an ALJ. Indeed, the latter decision (the subject of this original action) is explicitly contemplated for APA review. RCW 34.05.570(3)(c) ("The court shall grant relief from an agency order in an adjudicative proceeding only if it determines . . . [t]he agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure."). APA review provides a plain, speedy, and adequate remedy at law where the agency has engaged in an unlawful procedure or failed to follow a prescribed procedure. *See Seattle Times*, 170 Wn.2d at 588.

The Association argues that the refusal to comply with RCW 48.04.010(5)'s requirement to transfer a hearing to an ALJ is not "presently 'reviewable'" under the APA because it is not a final order and therefore not "'agency action.'" Pet'r's Opening Br. at 40. It appears that for the Association, review must be immediate to constitute a remedy. This argument is unpersuasive. The Association plainly prefers judicial scrutiny of the presiding officer's "interlocutory" order. The APA does not provide this specific *type* of review, instead requiring a party to wait and appeal any interlocutory orders together with the final agency order. RCW 34.05.570(3). The Association does not dispute that this relief is available; the Association objects to having to wait to utilize it. But delay alone does not make a remedy inadequate. *O'Brien*, 14 Wn.2d at 347. And a remedy is not inadequate simply because a petitioner desires a different one. *State ex rel. Prentice v. Superior Ct.*, 86 Wash. 90, 94, 149 P. 321 (1915) ("'The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy.'"

No. 100095-2

(quoting *State ex rel. Lewis v. Hogg*, 22 Wash. 646, 649, 62 P. 143 (1900))); *Ahmad v. Town of Springdale*, 178 Wn. App. 333, 342, 314 P.3d 729 (2013) ("A writ of prohibition is the counterpart to the writ of mandamus.").

The Association contends that a remedy forcing a party to participate in an invalid hearing before the presiding officer is no remedy at all. It analogizes RCW 48.04.010(5)'s mandatory transfer to an ALJ with a notice of disqualification for a judge and change of venue; both are mandatory and deprive the decision-maker of authority to hear a case. These situations are not analogous. An affidavit of prejudice effectively divests a judge of all authority to proceed on the merits of a case. 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3903, at 168 (3d ed. 2004). A transfer to another judge must be granted. *Id*. RCW 48.04.010(5) requires a hearing before an ALJ rather than before the agency's presiding officer. But regardless of what process is used, the final decision-maker remains same: the presiding officer. RCW 34.05.461(1). An affidavit of prejudice changes who decides a judicial proceeding, as does a change of venue. RCW 48.040.010(5) simply changes how a hearing proceeds, not who makes the decision.

Nevertheless, the Association points out that courts do not force litigants to endure a proceeding before an unauthorized decision-maker prior to obtaining review. This point is of no help to the Association—the underlying subjects (disqualification of a judge or change in venue and compliance with RCW 48.04.010(5)) are distinct. And, as mentioned earlier, the APA anticipates the possibility that an improper procedure may be

8

used by an agency and provides for review if it occurs. RCW 34.05.570(3)(c) ("The court shall grant relief from an agency order in an adjudicative proceeding only if it determines . . . [t]he agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure.").

The availability of this specific relief demonstrates that mandamus is inappropriate. Granting mandamus in this case when APA review of a particular claim exists is not only counter to the purpose of that writ (justified when no adequate remedy exists at law), it also conflicts with the express intent of the legislature that the APA be the "exclusive means of judicial review." RCW 34.05.510; *see also* RCW 34.05.570(3)(c). Further, issuing the requested writ would render APA review superfluous. Any time a party disagreed with an agency's "interlocutory" order, it would not need to use the exclusive means of review via the APA but could simply use mandamus to avoid that process. This is not the purpose of a writ of mandamus, *e.g.*, *Colvin*, 195 Wn.2d at 894, or of the APA. As noted, the APA seeks to ensure reliability and predictability in agency decisions and efficiency in the adjudicative process. *See* Andersen, *supra*, at 840, 805. Permitting a party to circumvent the process every other party must pursue directly conflicts with the goal of consistency and efficiency, and will likely encourage others to jump the queue, ultimately making this "extraordinary" writ effectively ordinary.

To the extent the Association compares mandamus to other writs granted to prevent a tribunal from acting without or in excess of its jurisdiction, this analogy is

No. 100095-2

unavailing  RCW 48.04.010(5) requires a specific procedure, but it does not divest the presiding officer of *jurisdiction* to decide the matter.  RCW 34.05.461(1); *State ex rel. N.Y. Cas. Co. v. Superior Ct.*, 31 Wn.2d 834, 839, 199 P.2d 581 (1948) ("'[J]urisdiction' . . . mean[s] the power to hear and determine a controversy, regardless of whether the ruling made in the particular case is correct or incorrect.").

The Association also argues that mandamus is necessary because even if the presiding officer agrees that Commissioner Kreidler exceeded his authority in issuing the data call, that determination would be "null and void."  Pet. for Writ of Mandamus at 18. But the Association does not identify what authority would deem that outcome void.  In the context of a reviewing court, presumably the Association would not appeal a decision in its favor.[1]  If the State appealed (and the reviewing court concluded that the hearing process was indeed improper under RCW 48.04.010), the remedy would be reversal and remand for a proceeding before an ALJ—an outcome the Association has sought all along.  It is not likely that the presiding officer's order is void, though it may be voidable; and as stated above, if it is overturned, the delay attendant to that result is not sufficient to justify an extraordinary writ.

Finally, the Association claims that requiring it to undergo a hearing before the presiding officer "would be futile as a matter of law and a waste of time and resources."

---

[1] Indeed, such an appeal would probably not be available.  The State notes that failure to follow procedure is insufficient for judicial review.  A party must show they were "substantially prejudiced by the [agency] action complained of."  RCW 34.05.570(1)(d).  If the presiding officer agreed with the Association on its underlying claim, the insurer members would not be required to provide the requested information and would therefore not be prejudiced by OIC action in order to appeal.  *See id.*

Pet. for Writ of Mandamus at 17; *see also* Pet'r's Opening Br. at 43. This assertion assumes that a decision-maker agrees with the Association's reading of RCW 48.04.010(5). Even accepting this point, a party's view of "futility" says little about the adequacy of an alternative relief. Moreover, expense and hardship associated with a remedy are acceptable when determining whether it is adequate for mandamus purposes. *See O'Brien*, 14 Wn.2d at 347.

We also note that the presiding officer stayed the data call. While the OIC attorney requested an opportunity to brief the appropriateness of the stay, this original action was filed before any briefing could occur. At this point, the Association members are not required to reveal the requested information and, in any event, they may prevail on the underlying claim that the call exceeded the commissioner's authority. Irrespective of our decision to grant or deny mandamus and require transfer to an ALJ, the data call is stayed pending a decision on the underlying action. This undercuts the Association's assertion that mandamus alone will provide relief to its members.

Where the APA provides a remedy, mandamus is not appropriate. *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 380 n.3, 932 P.2d 139 (1997); RCW 7.16.360.[2] Judicial review under the APA is a plain, speedy, and adequate remedy at law. *See Seattle Times*,

---

[2] In its reply brief, the Association argues that even if it should have sought relief under the APA rather than mandamus, we should not dismiss the petition but treat it as a petition for APA judicial review. The Association urges us to decide the petition on the merits or remand it to the Thurston County Superior Court to order Commissioner Kreidler to comply with RCW 48.04.010(5). We do not address this argument. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

11

170 Wn.2d at 588-89. The Association offers no reason why APA review does not protect the rights of its members or that full redress will not be afforded absent the writ. *See O'Brien*, 14 Wn.2d at 348. Not only can the Association appeal the interlocutory decision denying transfer to an ALJ, the APA specifically contemplates this error and provides an avenue for relief. *See* RCW 34.05.570(3)(c). APA review is an adequate remedy, therefore, the Association does not satisfy the second requirement to justify mandamus.[3]

## CONCLUSION

The Association fails to show that it lacked an adequate legal remedy when judicial review under the APA was available. Because the Association cannot satisfy all three requirements for mandamus relief, we dismiss the petition.

---

[3] We reach the same result under either the statutory or constitutional writ of mandamus. RCW 7.16.160; WASH. CONST. art. IV, § 4.

No. 100095-2

_____
Madsen, J.

WE CONCUR:

_____ _____
González, C.J.      Gordon McCloud, J.

_____ _____
Johnson, J.       Yu, J.

_____ _____
Owens, J.       Montoya-Lewis, J.

_____ _____
Stephens, J.      Whitener, J.