[No. 67290-3. En Banc.]
Argued June 17, 1999.    Decided October 21, 1999.

COWLES PUBLISHING COMPANY, *Petitioner,* v. SPOKANE POLICE DEPARTMENT, *Respondent.*

Witherspoon, Kelley, Davenport & Toole, P.S., by *Duane Michael Swinton*, for petitioner.
*McMullen Law Office*, by *Cynthia Ellen McMullen*, for respondent.

JOHNSON, J. — In *Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997), we held the "investigative records" exception to the public disclosure act categorically exempted from disclosure all police investigative records in an unsolved, "open" investigation. The question in the present appeal is whether the same categorical exemption we adopted in *Newman* applies in a case where the suspect has been arrested and the case referred to the prosecutor for a charging decision. Interpreting *Newman*, the Court of Appeals held all records in a police investigative file are categorically exempt from disclosure pending completion of enforcement proceedings. The Court of Appeals also held a requested booking photograph was separately protected from disclosure under RCW 70.48.100(2), the City and County Jails Act.

We reverse in part and affirm in part.

## FACTS

On May 30, 1997, Assistant Spokane City Attorney Milt Rowland was arrested for driving under the influence, reck-

less driving, leaving the scene of an accident, and attempted assault. On the same day as the arrest the Spokane Police Department (Department) officially referred the case to the prosecutor, requesting that charges be filed.

On the day of the arrest, details of the incident were made available orally by a police spokesperson resulting in news stories. On June 3, 1997, a reporter for THE SPOKESMAN REVIEW (published by Cowles Publishing Co. (Cowles)) requested a copy of Rowland's "booking photo" from the Department. On June 6, 1997, a second reporter requested the police report detailing the incident (incident report).

On June 9, 1997, the Department officially responded by letter indicating "[u]pon closure of this case within the judicial system, the Spokane Police Department will release investigative information." Clerk's Papers at 9. The letter also stated information would be released if the prosecutor's office determined "disclosure will not adversely affect the integrity of the case." Clerk's Papers at 9. The Department cited to the "bench-bar-press statement of principles and considerations" as part of its decision-making process. Nevertheless, the Department did release the incident report "cover sheet." This included the name of the defendant, the charge, the name of the officer who was assaulted, and the date, time, and location of the incident. On June 11, the Department officially declined to release the booking photograph, citing again to the bench-bar-press statement as the basis for its decision.

On July 3, 1997, Cowles filed suit seeking court-ordered release of the police report and related records concerning the Rowland incident, as well as the booking photograph. Following argument, but without any in camera review of the documents, the court ruled in favor of Cowles and ordered the release of the police incident report and booking photograph. The Department appealed and a stay was granted.

Initially, the Court of Appeals refused to reach the merits of the case. In an unpublished opinion, the court found the case moot because, just prior to oral argument, the Depart-

ment released the entire investigative file following Rowland's plea of guilty. *Cowles Publ'g Co. v. Spokane Police Dep't*, No. 16870-1-III, 1998 WL 283525 (Wash. Ct. App. June 2, 1998). Upon reconsideration, however, the court withdrew its earlier opinion and issued a decision which reached the merits. *Cowles Publ'g Co. v. Spokane Police Dep't*, No. 16870-1-III (Wash. Ct. App. Sept. 3, 1998).

Between the time of the trial court's decision and oral argument at the Court of Appeals, we decided *Newman v. King County*, 133 Wn.2d 565. In its September 1998 decision, the Court of Appeals held *Newman* controlled. Applying *Newman*, the court reasoned the only inquiry was whether the police investigation was leading to an enforcement proceeding. Finding that it was, the court held the investigation was "open" within the meaning of *Newman* and, thus, all records in the police investigative file were categorically exempt from disclosure until criminal proceedings were complete.

Citing RCW 70.48.100(2) (with limited exceptions, release of jail records prohibited), the court also found the booking photo was statutorily exempt from disclosure at any time. Accordingly, the Court of Appeals reversed the trial court and held the police were exempt from disclosing both the incident report and the booking photo at the time disclosure was requested. *Cowles Publ'g Co.*, No. 16870-1-III, slip op. at 5 (Sept. 3, 1998).

We granted review.

## ANALYSIS

■ The public disclosure act (PDA), RCW 42.17.250, mandates broad disclosure of all public records upon request. *See, e.g., Newman*, 133 Wn.2d at 570; *Limstrom v. Ladenburg*, 136 Wn.2d 595, 603-04, 963 P.2d 869 (1998). Statutory exemptions are narrowly construed and the agency claiming the exemption bears the burden of proving that the documents requested fall within the scope of the exemption. *Newman*, 133 Wn.2d at 571. In this case, the Department claims, at the time of the request, the investi-

gative records at issue were exempt from disclosure under RCW 42.17.310(1)(d), the "investigative records" exemption. The exemption applies to:

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

In *Newman*, we held this exemption protected the entire investigative file in an unsolved murder case. *Newman*, 133 Wn.2d at 574. Although the decision includes language to the effect that any "open" police investigative file categorically falls within the statutory exemption for "effective law enforcement," a close reading of the case demonstrates that we were reluctant to have the courts second-guess law enforcement agencies regarding release of sensitive information in unsolved cases:

> Requiring a law enforcement agency to segregate documents before a case is solved could result in the disclosure of sensitive information. The determination of sensitive or nonsensitive documents often cannot be made until the case has been solved. This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case.

*Newman*, 133 Wn.2d at 574. Thus, in *Newman*, we were concerned both with the difficulty police would have segregating information in unsolved cases, and with the propriety of charging courts with responsibility of determining whether nondisclosure was critical to solving the case—a task which we felt was better left to the professional judgment of the police.

These same concerns are not present in a case, as here, where the suspect has already been arrested and the matter referred to the prosecutor for a charging decision. In such circumstances, the risk of inadvertently disclosing sensitive information that might impede apprehension of

the perpetrator no longer exists. The Department tacitly admits as much here in that its argument focuses exclusively on protecting the trial process and the privacy rights of the defendant. The Department argues "effective law enforcement" encompasses more than "the police officer's investigation of the incident," but necessarily includes "the ability to properly conduct trial preparation, witness examination, and the trial itself." Pet. for Review at 10.

The Department does not argue that disclosure might have inadvertently compromised apprehension of a suspect, divulged sophisticated police investigative techniques, or disrupted the sharing of information between law enforcement agencies. Unlike *Newman*, this case does not present a circumstance in which the police are institutionally better suited to determine whether nondisclosure is essential to effective law enforcement. As such, the Department fails to establish in this case how nondisclosure of the requested information meets the requirements of RCW 42.17-.310(1)(d) or falls within the scope of *Newman*.

As to the protection of the trial process, we have already held not even prosecution files are categorically exempt from disclosure. *Limstrom*, 136 Wn.2d at 613. Instead, documents are protected from disclosure to the extent they are attorney "work product" under the civil discovery rules. *Limstrom*, 136 Wn.2d at 613. Generally, nothing in a police investigative file would be considered attorney work product. Thus, even under *Limstrom*, there would be no protection from disclosure and no burden placed on the requester to show the information is available from other sources. *See Limstrom*, 136 Wn.2d at 614-15 (if documents are not work product, "as a general matter" they should be disclosed).

■ Although we agree with the Department that nondisclosure may, under specific circumstances, still be necessary to protect pending enforcement proceedings in an individual case, courts are as qualified to review the potential affect of disclosure on the trial process as are the police or prosecutor. The protection of enforcement

proceedings is not a circumstance where the police, exercising their professional judgment, are in a better position to make disclosure decisions. Accordingly, to the extent nondisclosure may be necessary in a case such as this, an in camera review by the court is the proper method to determine whether nondisclosure of a document, or portions of a document, is essential to effective law enforcement. *See Limstrom*, 136 Wn.2d at 615 (in camera review is the only way a court can determine what portion of a document, if any, is exempt from disclosure).

■ Nor does a defendant's constitutional right to a fair trial compel categorical nondisclosure of police investigative records. Facts regarding pending criminal prosecutions are often made public prior to trial. This rarely results in the inability to impanel a fair and impartial jury. Similarly, the fact that allegations have not yet been proven is not persuasive of the need to provide blanket protection for purposes of a defendant's privacy. When a criminal suspect is arrested and charged with a crime there must be some factual basis for this, whether or not all or any of the allegations can be proven beyond a reasonable doubt at trial. The general public is well aware that a person is innocent until proven guilty. Rarely would criminal allegations so devastate the reputation of the suspect that nondisclosure would be necessary to protect against the effect of false accusation. Again, to the extent protection of the trial process or the privacy rights of a suspect are essential in any given case, the trial court should make that factual determination on a case-by-case basis. In any event, under the facts of this case, we are unpersuaded by the Department's argument. At the time the Department denied the disclosure requests at issue, it had already made all the pertinent details public. Thus, there was no further information left to protect.

In sum, we hold in cases where the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure of all records in the police investigative file. In such cases, to the extent

nondisclosure of records or parts of records is nevertheless necessary, the trial court should conduct an in camera review and make a case-by-case determination of whether nondisclosure is essential to effective law enforcement.

In this case, the only written document at issue is the police "incident report."[1] The Department has not carried its burden of proving that nondisclosure of the incident report was essential to effective law enforcement in this case.[2] The report contained only a basic factual description of events. To the extent it contained information supplied by witnesses, these were not formal statements taken in preparation of trial. In short, there is nothing contained in the report the disclosure of which would have harmed pending legal process or compromised the privacy right of the defendant. Accordingly, the incident report in this case should have been disclosed at the time of the request.

As to the booking photograph, the Department claims it was (and is) exempt from disclosure under RCW 70.48.100(2). That statute provides that records of persons *confined* in jail are to be "held in confidence" and "made available only to criminal justice agencies," with limited exceptions. An exception permits law enforcement agencies to "use booking photographs of a person *arrested or confined* in a local or state penal institution to *assist them in conducting investigations of crimes*." RCW 70.48.100(3)(a) (emphasis added).

The trial court held the statute did not apply because the request was made to the Department and not the jail. The Court of Appeals reversed, reasoning the statute prohibited release except to assist in criminal investigations. *Cowles Publ'g Co.*, No. 16870-1-III, slip op. at 4-5 (Sept. 3, 1998).

We agree with the Court of Appeals. If jail records become subject to public disclosure simply upon being shared with

---

[1]Although the Department eventually released approximately 39 documents in its file, until it filed suit Cowles had requested only the incident report and the booking photograph. In its ruling at the show cause hearing, from which this appeal followed, the trial judge ruled only as to the disclosure of the incident report and the booking photograph.

[2]The names of witnesses were redacted. We do not decide whether this was proper since neither party argues it.

a law enforcement agency, the intent of the Legislature to retain such documents "in confidence" would be easily circumvented since these agencies routinely share such information.

Cowles' argument that the statute does not apply because the defendant was not in jail at the time of the request is not persuasive. Nothing in the statute suggests that confidential jail records suddenly become open to public inspection when the jail term ends and the defendant is released. Furthermore, the language of the statute plainly contemplates that booking photographs taken at the time of *arrest* are to be used only to assist law enforcement. Nor is the purpose behind the PDA (review of agency process) furthered by "on demand" release of booking photographs.

We conclude the specific language of RCW 70.48.100(2) limits the use of booking photos to legitimate law enforcement purposes only. We affirm the Court of Appeals on this issue and hold that booking photographs do not fall within the disclosure mandate of the PDA.

Finally, the Department requests attorney fees. However, it cites no authority for its request and devotes no argument to it. We, therefore, award no fees to the Department. *See* RAP 18.1. Cowles' request for attorney fees pursuant to RCW 42.17.340(4) is granted insofar as it has prevailed at trial and on appeal. We remand the case to the trial court for determination of such fees.

## CONCLUSION

The "investigative records" exception to the PDA does not provide categorical exemption from disclosure to police investigative records in cases where the suspect is arrested and the case referred to the prosecutor. In such cases, police incident reports are presumptively disclosable upon request, unless it can be shown that nondisclosure in a given case is essential to effective law enforcement in that particular case. However, jailhouse and arrest booking photos are exempt from disclosure under RCW 70.48.100(2).

Reversed in part and affirmed in part.

GUY, C.J., and SMITH, MADSEN, ALEXANDER, and SANDERS, JJ., concur.

482

TALMADGE, J. (concurring) — I generally agree with the majority's disposition of this case, but I write separately because a case is "solved" or "closed" within the meaning of RCW 42.17.310(1)(d)[3] and *Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997), when an individual is arrested *and* charges have been filed against that individual by the prosecuting authority. To hold otherwise offers no clear guideline to law enforcement officials and persons seeking disclosure of information under our public disclosure act, RCW 42.17, and essentially contradicts our holding in *Newman*.

Our opinion in *Newman* stated RCW 42.17.310(1)(d) provides "a broad categorical exemption from disclosure [for] all information contained in an open active police investigation file." *Newman*, 133 Wn.2d at 575. We also said in *Newman*:

. . . We hold the broad language of the statutory exemption requires the nondisclosure of information compiled by law enforcement and contained in an open and active police investigation file because it is essential for effective law enforcement.

*Id.* at 574. Our determination in *Newman* was based on the statutory direction to permit law enforcement authorities to investigate criminal activities without having their time and energies deflected in court-related proceedings by parties, particularly the media, seeking to access the information on open criminal investigations during their pendency. We stated:

Requiring a law enforcement agency to segregate documents before a case is solved could result in the disclosure of sensitive information. The determination of sensitive or nonsensi-

---

[3]RCW 42.17.310(1)(d) states:

Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

tive documents often cannot be made until the case has been solved. This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case.

*Newman,* 133 Wn.2d at 574.

Case law provides guidance on this issue. In *Cowles Publishing Co. v. State Patrol,* 109 Wn.2d 712, 748 P.2d 597 (1988), we held the names and investigative files of police officers under scrutiny by law enforcement internal affairs units after citizens' complaints were exempt from public disclosure by virtue of RCW 42.17.310(1)(d), the identical provision at issue here and in *Newman.* However, we indicated this exemption was inapplicable once criminal charges were filed against an officer:

> As they currently operate in the various law enforcement agencies in Spokane County, internal investigation procedures are based on an assumption that information gathered during investigations will be kept confidential, *unless criminal charges are brought against the offending officer* . . . .

*Cowles Publ'g Co.,* 109 Wn.2d at 730 (emphasis added).

Indeed, we have defined "law enforcement" in the context of this exemption as involving the carrying out of a command. More specifically, "[l]aw enforcement involves imposition of sanctions for illegal conduct." *Brouillet v. Cowles Publ'g Co.,* 114 Wn.2d 788, 796, 791 P.2d 526 (1990). Obviously, until charges are actually filed by a prosecuting authority, there can be no imposition of sanctions.

In this case, we must decide when a case is actually "closed" or "solved." Insofar as the materials in question, with the exception of Milton Rowland's booking photograph, were actually provided to Cowles Publishing, we are establishing the appropriate definition of a "closed" case for future cases.

The appropriate line of demarcation for determining when a case is closed or solved is the point at which the executive branch of government has essentially concluded its

involvement with the case.[4] The majority says, "[W]e hold in cases where the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure of all records in the police investigative file." Majority op. at 479-80. This may very well be true in many cases, but simply submitting an investigation to a prosecutor for a charging decision does not always end the investigation. The prosecuting authority, whether a city attorney's office or a county prosecuting attorney's office, must then decide whether there is a sufficient basis to file criminal charges. If the prosecuting authority determines there is an insufficient factual or legal basis to file charges, the case is clearly neither solved nor closed. To use our language from *Brouillet*, 114 Wn.2d 788, there can be no imposition of sanctions. At that point, further investigation is required and the whole purpose for the exemption discussed in *Newman* applies.[5] Under the majority's analysis, law enforcement authorities doing further investigation would be susceptible to court-related proceedings for disclosure of all of their investigative materials.

The better point at which to say the case is "closed" is when the prosecuting authority has determined to file charges, as our earlier cases indicate. At that time, the case is essentially solved or closed from the perspective of the executive branch—the law enforcement agencies and the prosecuting authorities. The case is then within the province of the judicial branch of government, and it is no lon-

---

[4]Law enforcement agencies and prosecutors serve an executive branch function, but prosecutors serve a judicial branch role in filing charges and trying criminal actions. *See Anderson v. Manley*, 181 Wash. 327, 43 P.2d 39 (1935) (prosecutor enjoys quasi-judicial immunity in deciding whether to institute prosecution of a crime); *Mitchelle v. Steele*, 39 Wn.2d 473, 236 P.2d 349 (1951) (immunity extends to official acts committed with malice and without probable cause).

[5]The Sentencing Reform Act of 1981 directs a prosecutor as follows:

If the initial investigation is incomplete, a prosecuting attorney should insist upon further investigation before a decision to prosecute is made, and specify what the investigation needs to include.

RCW 9.94A.440, GUIDELINES/COMMENTARY: Police Investigation (3).

ger appropriate for the statutory exemption to apply. The broad policy of public disclosure set forth in chapter 42.17 RCW must then control.

In giving reasonable effect to the statutory exemption from the disclosure requirement, we do no more than uphold a time, place, and manner restriction on the release of public information. One of the overarching purposes of the public disclosure act is to allow "full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected." RCW 42.17.010(11). In the case of police investigations, the public certainly has a right to know whether such investigations are competent, fair, and expeditious, so the public may hold accountable those elected officials responsible for law enforcement. The news media, in their traditional and honored role, act to keep the public informed of such matters. Access to police investigatory records is therefore essential for the media to fulfill their role as the public's informant. The question is simply *when* is such access permissible. The Legislature, balancing the need for effective police work against the public's right to know the workings of government, contemplated in RCW 42.17-.310(1)(d) times when access is not permissible.

In my view, only in the rarest of circumstances, if at all, will the public be better served by allowing the media to view open investigatory files as opposed to prohibiting view until the investigation is closed. Once an investigation is closed, the media will have full access to the record (subject to other confidentiality restrictions) and will be able to report fully to the public on the conduct of the investigation, thus ensuring public accountability. As the timing of accessibility, and not accessibility itself, is the only concern in the case at bar, I would decide in favor of ensuring the integrity of effective police enforcement.

I would hold the Spokane Police Department should have turned over to Cowles Publishing Company all records relating to the case of Milton Rowland, except his booking

photograph, upon Rowland's arrest and the prosecuting authority's decision to file criminal charges against him.

IRELAND, J., concurs with TALMADGE, J.

Reconsideration granted in part and opinion modified January 7, 2000.