[No. 65896-4-I.   Division One.   September 19, 2011.]

EVAN SARGENT, *Respondent*, v. THE SEATTLE POLICE DEPARTMENT, *Appellant*.

*Peter S. Holmes*, City Attorney, and *Gary T. Smith*, *Assistant*, for appellant.

*Greg Overstreet* (of *Allied Law Group LLC*); and *Patrick Preston* and *Thomas M. Brennan* (of *McKay Chadwell PLLC*), for respondent.

*Ramsey E. Ramerman* on behalf of Association of Municipal Attorneys, amicus curiae.

¶1 ELLINGTON, J. — This case is brought under the Public Records Act (PRA), chapter 42.56 RCW. The chief issue is whether a request for public records has indefinite effect, such that after an agency has responded to a request, it must monitor the status of all records within the request and disclose any that later become subject to disclosure. We must also decide whether the categorical exemption for records of an open and active law enforcement investigation terminated at the point of the last witness interview, whether the open and active investigation exemption applies to internal police disciplinary records, whether certain redactions to the disclosures made here were justified, and what penalties and fees are appropriate.

¶2 We hold that there is no standing request under the PRA. We also hold the statutory exemption for records of an open and active law enforcement investigation does not end with the final witness interview; the open and active exemption applies to police disciplinary investigation records; certain redactions from the records were not justified; the statutory maximum penalty is not appropriate where there is no showing of gross negligence, bad faith, or other improper conduct; and Evan Sargent's fees were improperly limited.

¶3 We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶4 On July 28, 2009, Evan Sargent had an altercation with off-duty Seattle Police Department (SPD) Officer Donald Waters. Sargent was arrested for assault and released pending charges.

¶5 On July 30, Detective Nathan Janes submitted the case to the King County Prosecuting Attorney's Office (KCPA) for rush filing. KCPA declined to proceed and returned the case for further investigation.

¶6 On August 31 and September 1, 2009, Sargent filed requests under the PRA, seeking documents related to the incident. In letters dated September 4 and 9, SPD denied Sargent's requests on grounds that under RCW 42.56-.240(1), the requested documents were exempt from disclosure as records of an open and active law enforcement investigation. SPD suggested Sargent resubmit his request in six to eight weeks.

¶7 Sargent challenged the denial. In response, SPD provided the name and badge number of Officer Waters but otherwise continued to deny Sargent's request. Sargent did not file suit.

¶8 On October 22, 2009, Sargent submitted a complaint to SPD's Office of Professional Accountability (OPA), which began a disciplinary investigation of Officer Waters.

¶9 Meanwhile, Detective Janes continued to investigate the allegations against Sargent. Janes conducted his last witness interview on October 23, 2009. On either November 17, 2009 or January 13, 2010 (the record is unclear), Janes referred the case to the Seattle city attorney for prosecution. On January 20, 2010, the city attorney declined to file charges. SPD notified Sargent of this determination.

¶10 On February 5, 2010, Sargent resubmitted and clarified his requests for information about the July incident,

seeking (1) the investigative file, including the incident report and all references or related witness statements or other investigation documentation or materials; (2) all associated 911 tapes; (3) the associated computer aided dispatch system (CAD) log. Additionally, Sargent requested (4) all written or recorded communications (including electronic communications) by or concerning Officer Waters or Detective Janes regarding Sargent or the investigation of the July 28, 2009 incident and (5) all information regarding any disciplinary investigation of Officer Waters and/or other personnel arising from the investigation of the July 28, 2009 incident.

¶11 On March 10, SPD provided the 911 tapes. It also provided the investigative file and the CAD log, both with names of witnesses redacted for their safety (citing RCW 42.56.240(2)). SPD withheld the disciplinary file under the open and active investigation exemption and suggested Sargent resubmit his request in four to six weeks, and stated it needed additional time to do research before responding to his request for all written communications regarding the event or the investigation thereof. On April 5, SPD provided written communications and additional documents from the investigative file, but redacted jail records (citing RCW 70.48.100),[1] the names of the witnesses and alleged victim, and documents containing Sargent's Social Security number and vehicle identification information on grounds that nondisclosure was essential to effective law enforcement or for the protection of privacy or safety (citing RCW 42.56.230, .240(1), (2)).

¶12 On April 30, 2010, OPA determined that Sargent's complaint against Waters was not sustained. OPA informed Sargent the investigation was closed. Sargent did not submit a new request for the records.

¶13 Sargent filed a complaint in King County Superior Court, alleging violation of the PRA. After a show cause

---

[1] SPD withheld nonconviction criminal history, later citing the Washington State Criminal Records Privacy Act, chapter 10.97 RCW.

hearing, the court ruled that SPD violated the act in numerous ways. The court found that the case file documents sent to KCPA in July for rush filing were not exempt thereafter and should have been provided in response to Sargent's first request; that Sargent's first request "continued to be pending and was broadened"; that the active investigation ceased October 23, 2009 at the time of the last witness interview; and that SPD was "not acting in good faith" from that date to the date of the show cause hearing.[2] The court ordered production of unredacted copies of all requested records except the internal disciplinary investigation files, and assessed penalties in the statutory minimum amount of $5 per day from the date of Sargent's initial request until Detective Janes' last witness interview on October 23, and thereafter at the statutory maximum of $100 per day until the date of the show cause hearing. The court awarded attorney fees to Sargent through the hearing date.

## DISCUSSION

¶14 The PRA is a broad mandate for access to records that reveal the workings of government. Generally, public records are available for inspection and copying by anyone who wants to see them for any reason.[3] Some records, however, are exempt from disclosure. This case involves the exemptions that apply to law enforcement files. The overriding question, however, is whether a records request has continuing effect after the agency has responded.

---

[2] Clerk's Papers at 441.

[3] RCW 42.56.100; *see also* WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 2.2, at 2-3, 2-4 (2006).

¶15 The PRA is liberally construed, and its exemptions are narrowly construed.[4] The burden of proof that an exemption applies is on the agency.[5] Our review is de novo.[6]

### Standing PRA Requests

¶16 The controlling issue is whether a request for public records remains indefinitely "standing," such that even after an agency has properly responded, the agency must search out and disclose additional records if the basis for a claimed exemption ceases to apply.

¶17 Sargent contends his first requests on August 31 and September 1 remained pending throughout. The trial court agreed. In its oral decision, the trial court discussed "whose burden it is to renew a public records request":

> It's not the burden of the person asking for a disclosure to continue to request disclosure at frequent intervals. Once a person has asked that specific items be turned over to them, then it's the City's burden to determine when, if ever, it can do that.[7]

¶18 The statute, however, does not say that. The purpose of the PRA is to provide full public access to existing, nonexempt records.[8] The legislature requires agencies of government to respond to requests in a timely and clear fashion. But it does not require that agencies provide updates to previous responses, or monitor whether docu-

---

[4] RCW 42.56.030; *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997).

[5] RCW 42.56.550(1); *Koenig v. City of Des Moines*, 158 Wn.2d 173, 180, 142 P.3d 162 (2006).

[6] RCW 42.56.550(3); *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007).

[7] Report of Proceedings (RP) (Aug. 20, 2010) at 28-29.

[8] *Am. Civil Liberties Union of Wash. v. Blaine Sch. Dist. No. 503*, 86 Wn. App. 688, 695, 937 P.2d 1176 (1997).

ments properly withheld as exempt may later become subject to disclosure.[9]

¶19 As the Washington State Bar Association's *Public Records Act Deskbook* comment states, "The Public Records Act does not provide for 'continuing' or 'standing' requests."[10] Instead, the comment suggests "refresher" requests. The *Deskbook* comment is aimed primarily at newly created documents, but for this purpose, newly created documents are indistinguishable from newly nonexempt documents. The Washington State attorney general's model rules are in accord: "An agency is not obligated to supplement responses."[11]

¶20 This is a sensible, bright-line rule. Agencies are required to respond to requests in a timely fashion by disclosing all nonexempt documents. Nothing in the language or history of the statute indicates the legislature intended to impose on agencies an endless monitoring of old requests, or to require updated responses indefinitely to people who may have long since lost interest.

¶21 Further, the statute requires that public records be made available for "inspection and copying."[12] A requestor may elect merely to inspect the records rather than bear the cost of copies.[13] Once inspection has occurred, a request can hardly be considered standing. Just as with a nonexistent record, an exempt record is not available for inspection and cannot be copied. The approach of the trial court treats

---

[9] According to the responsible official, SPD receives over 3,000 PRA requests per year. The trial court remarked that standing requests in the law enforcement context would not pose an unreasonable burden because the onus would fall not on the city attorney but on the detectives in each case. This suggestion overlooks several practical realities, including personnel changes, the passage of time, and the fact that the request log is unlikely to be maintained in the squad room.

[10] WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 5.3(3)(d) cmt. at 5-31 (2006).

[11] WAC 44-14-04004(4)(a). The model rules were promulgated at the request of the legislature to provide guidance to agencies and the public. *See* RCW 42.56.570.

[12] RCW 42.56.070.

[13] *See* RCW 42.56.120.

requests for inspection differently from requests for copies. The statute does not do so.

¶22 SPD responded to each of Sargent's requests as it came in. Sargent was able to appeal those responses. When the status of the records changed, he was notified and had the opportunity to refresh his request. He did so, at least for the investigation file, and the records were, with minor exceptions, properly disclosed.

¶23 The PRA does not provide for standing records requests. An agency is not required to monitor whether newly created or newly nonexempt documents fall within a request to which it has already responded. Because this error affected most of the rulings made below, we reverse and remand for further proceedings as discussed below.

*Exemption for Open and Active Law Enforcement Investigations*

■ ¶24 Under RCW 42.56.240, public records are exempt from disclosure when their production would interfere with privacy or with effective law enforcement:

> The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
>
> (1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential *to effective law enforcement* or *for the protection of any person's right to privacy.*[14]

As established in *Newman v. King County*, this exemption applies categorically to all records of open and active police investigations.[15] In *Newman*, a journalist requested police records in the unsolved murder of prominent civil rights

---

[14] (Emphasis added.)

[15] 133 Wn.2d 565, 574-75, 947 P.2d 712 (1997).

leader Edwin Pratt, who was killed in 1969. Two government agencies were still investigating the murder and denied the request under the "essential to effective law enforcement" exemption.[16] The Washington Supreme Court agreed, and held the effective law enforcement prong of RCW 42.56.240(1) constitutes a categorical exemption for all records of open and active police investigations; such records are not subject to in camera review by judges.[17] The court reasoned that whether disclosure would compromise an open investigation is best determined by law enforcement, not courts.[18]

¶25 The categorical exemption applies if the investigation is leading toward "an enforcement proceeding."[19] The parties do not dispute that the records were categorically exempt as long as SPD's investigation of the July incident remained open and active.

¶26 The first question is when the categorical exemption ceased or was interrupted. In *Cowles Publishing Co. v. Spokane Police Department*, the court clarified that the categorical exemption ends when police refer a case to a prosecuting agency: "[W]here the suspect has been arrested and the matter referred to the prosecutor, any potential danger to effective law enforcement is not such as to warrant categorical nondisclosure."[20] After referral, the exemption must be justified as applied to the particular case.[21]

¶27 Here, the case was twice referred to a prosecutor. First, two days after the incident, it was referred to the KCPA for rush filing. King County declined to file and

[16] *Id.* at 569.

[17] *Id.* at 575.

[18] *Id.* at 574.

[19] *Id.* at 573.

[20] 139 Wn.2d 472, 479, 987 P.2d 620 (1999).

[21] *Id.* at 479-80; *see also Seattle Times Co. v. Serko*, 170 Wn.2d 581, 593-94, 243 P.3d 919 (2010).

returned the case for further investigation. Then, some months later, SPD referred the case to the city attorney.

¶28 Sargent contends, and the trial court agreed, that when the case was sent to the KCPA in late July, the records submitted lost their categorical exemption. This would be true had nothing else occurred, but it ignores the subsequent events: before Sargent filed his first records request, the KCPA had returned the file for further work and SPD had resumed its investigation.

¶29 *Newman* and *Spokane Police* both rest on the premise that disclosure of records during an open investigation is a judgment best left to law enforcement.[22] The suggestion that the records initially submitted should have been disclosed, despite the prosecutor's implicit conclusion that the investigation was incomplete, amounts to a judicial declaration that disclosure would not have interfered with the remaining investigation. As the *Newman* court pointed out, judges are not equipped to make such a determination.[23] At the time of Sargent's request, the entire case file constituted an open investigation within the categorical exemption. The trial court erred in ruling SPD violated the act by failing to disclose the documents submitted for rush filing in July.

¶30 Eventually, the file was referred to the city attorney, at which point the categorical exemption for open investigations ceased under *Spokane Police*.

¶31 The trial court ruled, however, that the investigation ceased to be open and active, and the exemption ceased to apply, *as of the date of the last witness interview, October 23.* From that date forward, the court imposed the maximum penalty of $100 per day for nondisclosure.

---

[22] *Newman*, 133 Wn.2d at 573-74; *Spokane Police*, 139 Wn.2d at 477.

[23] *Newman*, 133 Wn.2d at 574. The parties do not brief, and we do not address, what procedure should obtain where a records request is filed while the case is still in the hands of the prosecutor, who thereafter returns the file for further investigation.

¶32 We disagree with this analysis for several reasons. First, it is plainly unworkable. It would require police agencies to recognize that an interview or other activity is the last step in an ongoing investigation. The fact that a particular event turns out to be the last will not necessarily be obvious at the time. And whether to investigate further or whether the file is ready for referral to a prosecuting agency will often be a collective or command decision and not solely the judgment of the officer who happens to collect the last piece of evidence. The trial court's ruling subjects police agencies to penalties both for lack of prescience and for internal collaboration in determining the sufficiency of an investigation.

¶33 This approach also does not conform to *Newman*, which instructs that documents in an open and active law enforcement investigation are not subject to disclosure when the investigation is leading toward an enforcement proceeding,[24] or to *Spokane Police*, which holds an investigation is no longer open and active as of the time law enforcement refers the case to the prosecutor.[25] Just as whether effective law enforcement requires that records of an open investigation be exempt from disclosure is a judgment best left to law enforcement,[26] so is deciding whether an investigation is ready for referral to the prosecutor. The trial court erred by substituting its judgment for that of the police department.

¶34 The categorical exemption expired when the case was referred to the city attorney for prosecution. SPD did not violate the PRA or act in bad faith by declining disclosure before that date.

---

[24] *Id.* at 575; *see also Seattle Times*, 170 Wn.2d at 593.

[25] *Spokane Police*, 139 Wn.2d at 479.

[26] *See id.* at 477.

*Exemptions*

■ ¶35 We turn now to the particular exemptions claimed in SPD's response to the only request made by Sargent after the investigation closed, the February 5 request. The PRA requires that the agency demonstrate that a claimed exemption applies to the record withheld.[27] The trial court held SPD failed to do this in several respects.

■ ¶36 Nondisclosure of Witness Identities. In disclosing the investigative file, SPD redacted the names of witnesses, citing the exemption for the protection of witnesses and victims of a crime in RCW 42.56.240(2):

> Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property. If at the time a complaint is filed the complainant, victim, or witness indicates a desire for disclosure or nondisclosure, such desire shall govern.

The trial court rejected this exemption, ruling that absent a specific request from a witness for nondisclosure of personal information, the agency must make an affirmative showing that disclosure entails a potential threat to safety or property, which SPD failed to do.

¶37 We agree. SPD made no showing that disclosure of identifying information would "endanger any person's life, physical safety, or property."[28] The safety exemption did not justify nondisclosure.

¶38 SPD also contends the identifying information falls within the categorical exemption as essential to effective

---

[27] RCW 42.56.070(1) (justification for redactions of personal information "shall be explained fully in writing"), .210(3) (refusal "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld"); *see also Sanders v. State*, 169 Wn.2d 827, 845-46, 240 P.3d 120 (2010).

[28] *See* RCW 42.56.550(1).

law enforcement because the prospect of disclosure would have a chilling effect on witnesses who would not come forward for fear of retaliation, thus impeding the ability of law enforcement to gather firsthand accounts of an incident.

¶39 We do not agree there is a categorical exemption, but there is case law supporting SPD's argument.

¶40 Both *Cowles Publishing Co. v. State Patrol*[29] and *Koenig v. Thurston County*,[30] addressed disclosure of witness and officer identities after investigations closed. In *State Patrol*, the court held the identities of law enforcement officers and witnesses involved in internal investigations were exempt under RCW 42.56.240(1) because confidentiality of the names in the records was "necessary to effective law enforcement."[31] The lead opinion found "particularly apropos" the following observations of the D.C. Circuit:

> "If an agency's investigatory files were obtainable without limitation after the investigation was concluded . . . [t]he names of people who volunteered the information that had prompted the investigation initially or who contributed information during the course of the investigation would be disclosed. The possibility of such disclosure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants."[32]

The *State Patrol* court held:

> [T]he confidentiality of the names of persons reflected on the records of internal investigations is necessary to effective law enforcement. We hold that where internal investigation files have already been released, the names of the complainants,

---

[29] 109 Wn.2d 712, 748 P.2d 597 (1988) (plurality opinion).

[30] 155 Wn. App. 398, 407-11, 229 P.3d 910 (2010), *review granted*, 170 Wn.2d 1020, 245 P.3d 774 (2011).

[31] *State Patrol*, 109 Wn.2d at 733.

[32] *Id.* at 732-33 (quoting *Aspin v. Dep't of Def.*, 160 U.S. App. D.C. 231, 491 F.2d 24 (1973)).

witnesses and officers involved are exempt from disclosure under RCW 42.17.310(1)(d).[33]

¶41 But the main *State Patrol* opinion was signed by only four justices. Two others concurred solely on grounds the trial court made unchallenged findings that nondisclosure was essential to effective law enforcement.[34] Three other justices dissented, concluding that disclosure, not concealment, is essential to effective law enforcement.[35]

¶42 In *Koenig*, Division Two of this court addressed a similar argument under RCW 42.56.240(1) regarding disclosure of a victim impact statement.[36] The trial court reviewed at least four declarations, including that of the victim, each explaining the potential chilling effect of disclosure, and ruled the PRA permitted nondisclosure. This court affirmed, also in broad language: "Public disclosure . . . would have a chilling effect [on effective law enforcement] by making victims reluctant to fully disclose the impact of crimes [and would] discourage victims from submitting victim impact statements in the first place."[37] But we expressly relied upon the evidence adduced below and confined our holding to the document at issue.[38]

¶43 We conclude there is no clear categorical exemption for witness identification under the effective law enforcement prong of RCW 42.56.240(1). The question thus turns upon the adequacy of the agency's showing that the exemption applies in the particular case.[39] SPD relied upon its claim of categorical exemption and made no showing

[33] *Id.* at 733.

[34] *Id.* at 734 (Andersen, J., concurring).

[35] *Id.* at 736 (Dolliver, J., dissenting).

[36] *Koenig*, 155 Wn. App. at 404-12.

[37] *Id.* at 410.

[38] *Id.* at 407-11.

[39] Whether nondisclosure is essential to effective law enforcement is a question of fact. *Id.* at 407.

that redaction of names was needed to ensure effective law enforcement. Because SPD may reasonably have relied upon the strong language in *State Patrol* suggesting a categorical exemption, we remand for an opportunity for SPD to justify redaction of witness identifying information here.

¶44 <u>Reasons for Refusal To File Charges.</u> SPD asserted the effective law enforcement prong of RCW 42.56.240(1) for its redaction of information that allegedly revealed the reasons the city attorney declined to file charges against Sargent and an entry from Janes' log. SPD contends disclosure of such information "essentially would provide a roadmap to potential criminals describing how to avoid prosecution."[40] Review of the two entries suggests otherwise.

¶45 First, SPD redacted an entry from Janes' investigation log reflecting his opinion that disclosure of information to Sargent before he had made a statement to police would "undermine[ ] the suspect's credibility, for if he has all of the information known to law enforcement, he can tailor his statement to match the known facts."[41] SPD does not explain why this reasoning should be withheld from Sargent or the public. Avoiding an opportunity for an accused to tailor his statement to his advantage is not a secret law enforcement technique.

¶46 Second, SPD withheld the "filing decline memo" from the city attorney, which notes, "Both victim and defendant appeared to be a bit out of line. A reasonable trier of fact, based on all the evidence and reasonably foreseeable defenses (self-defense) will [not] be likely to find the def[endant] guilty beyond a reasonable doubt."[42] Again, SPD fails to explain why this line of reasoning should not be disclosed. The beyond a reasonable doubt standard for a

---

[40] Br. of Appellant at 30.

[41] Clerk's Papers at 499.

[42] *Id.* at 571.

criminal conviction is an obvious consideration for a prosecutor deciding whether to press charges.[43]

¶47 We agree with the trial court that SPD failed to justify these nondisclosures under RCW 42.56.240(1).

¶48 *Sargent's Jail Records and Nonconviction Criminal History.* The PRA mandates that agencies disclose requested information unless it falls under a PRA exemption or is exempt under another statute.[44] The jail records statute provides that "records of a person confined in jail shall be held in confidence and shall be made available only to criminal justice agencies . . . or . . . [u]pon the written permission of the person."[45] The trial court ruled this statute does not apply when the subject of the records seeks their disclosure.[46] We agree. Sargent requested his own jail records, including booking photos. Although the request was signed not by Sargent but by his attorney, this surely amounts to a grant of permission. SPD improperly withheld Sargent's jail records.

¶49 SPD also withheld Sargent's nonconviction criminal history, relying on the privacy prong of RCW 42.56.240(1) and on the Washington State Criminal Records Privacy Act (CRPA), chapter 10.97 RCW. The court ordered disclosure but made no findings as to the claimed exemptions.

¶50 The CRPA permits the subject of a criminal record to inspect that record in person at the agency but prohibits

---

[43] It appears there was no assertion of attorney-client privilege below, and we do not speculate upon it. On appeal, SPD asserts the attorney work product exemption under RCW 42.56.290. *See Soter*, 162 Wn.2d at 731; *Limstrom v. Ladenburg*, 136 Wn.2d 595, 611, 963 P.2d 869 (1998). A contention not advanced below cannot be urged for the first time on appeal. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). A thorough search of the record fails to reveal that SPD asserted the attorney work product exemption below. We thus do not address it.

[44] RCW 42.56.070(1).

[45] RCW 70.48.100(2)(d).

[46] The court reasoned that SPD had not cited law that "forbids the release of booking information to the very person who was booked." RP (Aug. 10, 2010) at 27.

retention or reproduction unless for the purpose of a challenge or correction, in which case the subject of the records must assert in writing that information is inaccurate or incomplete.[47] The CRPA also instructs that "[t]he provisions of [the PRA] shall not be construed to require or authorize copying of nonconviction data for any other purpose."[48] Sargent did not submit a request for his nonconviction data for the purpose of a challenge or correction and was not entitled to copies of those records under the CRPA. SPD properly withheld the records.

## Metadata

¶51 Sargent requested "[a]ll written or recorded communications (including electronic communications such as email or text messages) by or concerning Officer Donald Waters . . . or Detective Nathan Janes, regarding Evan Sargent and/or the investigation of [the July 28, 2009 incident]."[49] SPD provided hard copies of the e-mails and contends it was under no obligation to disclose records in electronic format. SPD is correct. Under *O'Neill v. City of Shoreline*, a government agency is not obligated to produce electronic versions of its records unless the request clearly indicates a preference for that format.[50] Sargent did not so indicate.

## Disclosure of Disciplinary Investigative Records

¶52 On cross appeal, Sargent assigns error to the court's refusal to require disclosure of the disciplinary investigative files.[51] SPD counters that the files were

---

[47] RCW 10.97.080.

[48] *Id.*

[49] Clerk's Papers at 125.

[50] 170 Wn.2d 138, 151-52, 240 P.3d 1149 (2010).

[51] Sargent asserts the court's written order, which clearly refused to order SPD to produce unredacted copies of disciplinary records, should be "clarified" to reflect

categorically exempt as essential to effective law enforcement under RCW 42.56.240(1) while the disciplinary investigation was open and active, and that after it concluded on April 30, 2010, Sargent failed to submit a new request despite being notified of the disposition.

¶53 SPD is correct. The *Newman* court's reasoning applies equally to disciplinary investigations: "The ongoing nature of the investigation naturally provides no basis to decide what is important.... The determination of sensitive or nonsensitive documents often cannot be made until the case has been solved."[52] A disciplinary investigation could lead to criminal charges, and disclosure of the records while the investigation is underway could compromise both the investigation and any subsequent actions. The files were categorically exempt when Sargent made his request.[53]

¶54 As discussed above, the PRA does not provide for standing requests.

*PRA Violation Penalties*

¶55 The PRA requires imposition of per diem penalties for violations and provides that "it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one-hundred dollars

---

the court's oral ruling that *"all* the information thus far withheld . . . be turned over immediately." RP (Aug. 10, 2010) at 30 (emphasis added). Written findings control over an oral decision. *Grundy v. Brack Family Trust,* 151 Wn. App. 557, 571, 213 P.3d 619 (2009), *review denied,* 168 Wn.2d 1007, 226 P.3d 781 (2010); *State v. Hinds,* 85 Wn. App. 474, 486, 936 P.2d 1135 (1997) (an oral decision may supplement written findings to the extent the oral decision does not conflict with the written findings).

[52] *Newman,* 133 Wn.2d at 574.

[53] We do not address what disclosure would have been called for had a request been submitted after the investigation closed. A recent decision of our Supreme Court rejected the personal privacy exemption in this context except as to the officer's name, but did not address the essential to effective law enforcement exemption. *See Bainbridge Island Police Guild v. City of Puyallup,* 172 Wn.2d 398, 259 P.3d 190 (2011).

for each day [in violation of the PRA]."[54] SPD argues the court abused its discretion in awarding the penalties, including the $100 per day maximum penalty. We agree.

¶56 In *Yousoufian v. Office of Ron Sims, King County Executive*, the court set forth guidelines for determining an appropriate penalty for a PRA violation.[55] Yousoufian had filed a PRA request with King County in May 1997. The county released records to him in increments over time, asserting that it was searching various locations or that his requests were unclear. By June 2001, the county had finally disclosed all the documents—more than four years after the initial request, and more than one year after Yousoufian had filed a PRA lawsuit. The trial court found the county grossly negligent and imposed a $15 per day penalty.[56]

¶57 The Supreme Court held the penalty was not proportionate to the misconduct, and set forth 16 nonmandatory and somewhat overlapping guidelines for PRA penalty assessments:[57]

[M]itigating factors that may serve to decrease the penalty are (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor;

---

[54] Former RCW 42.56.550(4) (2005). An award of statutory penalties and fees under the PRA is reviewed for abuse of discretion. *Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 458, 229 P.3d 735 (2010). An abuse of discretion is a manifestly unreasonable decision or one based on untenable grounds or for untenable reasons. *Id.*

[55] 168 Wn.2d 444, 459-63, 229 P.3d 735 (2010).

[56] *Id.* at 457-58. The first penalty imposed was $5 per day. After the first appeal, it was increased to $15 per day.

[57] *Id.* at 468 ("[T]he factors . . . are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. . . . These factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties.").

and (7) the existence of agency systems to track and retrieve public records.

Conversely, aggravating factors that may support increasing the penalty are (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.[58]

The *Yousoufian* court held the appropriate penalty for the county's gross negligence was $45 per day.[59]

¶58 By comparison, the penalty assessment against SPD is completely disproportionate. SPD timely responded to Sargent's requests, properly withheld the criminal investigative records (and suggested timing for a "refresher" request), disclosed the records within two months when they were not exempt, properly withheld the disciplinary investigation file, and kept Sargent informed of the status of the criminal and disciplinary investigations. SPD violated the PRA only insofar as it failed to provide Sargent's jail records and failed to justify certain exemptions. And SPD's reliance upon a categorical exemption for witness identification was hardly an unreasonable reading of the case law. Finally, the trial court's finding of bad faith is not

---

[58] *Id.* at 467-68 (footnotes omitted).

[59] *Id.* at 468-69. There is no indication the trial court applied the *Yousoufian* factors here.

supported by the evidence,[60] and there is no showing that SPD was negligent.

¶59 There was no basis for the maximum penalty.

## *Attorney Fees*

¶60 A party who prevails against an agency in PRA litigation is entitled to all costs, including reasonable attorney fees, incurred in connection with such legal action.[61] Attorney fees awards are reviewed for abuse of discretion.[62]

¶61 SPD contends the court awarded fees at an excessive hourly rate and for an unreasonable number of hours. But the court applied the lodestar method, which is the accepted approach to awarding legal fees in PRA cases,[63] found the rates reasonable, and awarded fees for the hours it found to be justified. SPD does not show any abuse of discretion in the court's methodology.

¶62 For his part, Sargent contends the court abused its discretion by declining to award fees incurred after the August 20, 2010 hearing. We agree. A prevailing plaintiff in a PRA action is entitled to *"all costs . . .* incurred in connection with such legal action."[64] Given this clear language, and in conjunction with the PRA's mandate of liberal

---

[60] SPD does not assign error to the finding of bad faith but challenges its legal basis. Because we agree with SPD on the legal context, we reject the finding for purposes of the penalty. The trial court also implied bad faith with respect to SPD's handling of Sargent's request after the case was referred to the city attorney. There is nothing in the record of proceedings or clerk's papers to support this conclusion.

[61] RCW 42.56.550(4).

[62] *Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 120, 231 P.3d 219 (2010).

[63] *West v. Port of Olympia*, 146 Wn. App. 108, 122, 192 P.3d 926 (2008) (citing *Mahler v. Szucs*, 135 Wn.2d 398, 433, 957 P.2d 632 (1998)). The court determines the number of hours reasonably expended in the litigation and multiplies it by the reasonable hourly rate of compensation. *Id.*

[64] RCW 42.56.550(4) (emphasis added).

construction,[65] it was an abuse of discretion to exclude fees related to successful issues simply because the fees were incurred after the hearing.

■ ¶63 Where PRA litigation involves several disputed issues, however, the court should award fees only for work on successful issues.[66] On remand, therefore, the court must limit the fees award to work on the issues upon which Sargent prevails.

■ ¶64 Sargent requests fees on appeal under RAP 18.1 and RCW 42.56.550(4). We award fees to the extent Sargent has prevailed in this appeal; the amount shall be determined by the trial court on remand.

## CONCLUSION

¶65 We affirm the trial court's refusal to require disclosure of the disciplinary investigation files. We also affirm the court's rulings that the safety and effective law enforcement exemptions did not justify nondisclosure of witness identifications, and the effective law enforcement exemption did not justify redaction of the reasons for not filing charges or the entry in Janes' log concerning disclosure of records prior to conducting an interview with Sargent.

¶66 The trial court erred in holding that Sargent's initial request remained pending after SPD formally responded, in holding the investigative file submitted to the city attorney was subject to disclosure in response to a request made after the investigation had resumed, in holding the open investigations exemption ceased on the date of the last witness interview, in requiring SPD to release Sargent's jail records, and in its assessment of penalties. The court also erred in limiting Sargent's fees to those incurred as of the date of the hearing but not thereafter. We reverse these rulings.

---

[65] RCW 42.56.030.

[66] *Sanders,* 169 Wn.2d at 868.

¶67 We remand for further proceedings consistent with this opinion, including an opportunity for SPD to show its effective law enforcement justification for redacting the witness identifications in this case (as opposed to a categorical exemption), for reconsideration of penalties, for a revised fees award, and for a revised disclosure order.

GROSSE and BECKER, JJ., concur.

Reconsideration denied April 17, 2012.

Review granted at 175 Wn.2d 1001 (2012).