

FILE
...OFFICE
S..........OF WASHINGTON
OCT 1 0 2019
_Fairhurst, CJ_
CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct 10, 2019

_Susan L. Carlson_
Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RON GIPSON, | ) | No. 96164-6 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| SNOHOMISH COUNTY, a municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | Filed **OCT 1 0 2019** |
| | ) | |

MADSEN, J.—Ron Gipson challenges Snohomish County's response to a records request under the Public Records Act (PRA), chapter 42.56 RCW, which allows agencies to withhold information relating to "active and ongoing" employment investigations for "unfair practice . . . or of a possible violation of other federal, state, or local laws prohibiting discrimination." Former RCW 42.56.250(5) (2014). Gipson requested records that related to allegations of workplace sexual harassment against him. At the time of his request, Gipson was under investigation for those allegations. Due to the voluminous request, Snohomish County responded by producing the documents in five installments over the course of several months and asserted the active and ongoing

investigation exemption under the act for each of those installments. Gipson argues treating each installment with the exemption was improper under the PRA. We disagree.

For the following reasons, we hold that Snohomish County properly applied the active and ongoing investigation exemption and affirm.

## FACTS

In 2014, Gipson was under investigation for several allegations of sexual harassment and sexual discrimination reported by a few female corrections officers from the Snohomish County Denney Juvenile Justice Center, where he was employed. This investigation was conducted by an outside investigator, Marcella Fleming Reed (referred throughout by the parties as MFR). The investigation continued until February 2, 2015.

Gipson was the longest serving council member at the time on the Everett City Council and was up for reelection in 2015. To address the allegations and a report on the matter from a local news outlet, Gipson submitted a public records request on November 28, 2014, for "all records which in any way mentions the name Ron Gipson as it relates to this [public records request]." Clerk's Papers (CP) at 52-56. The county received the request on December 1, 2014, and assigned the request tracking number 14-06701. *See* CP at 47-48. In response to Gipson's voluminous request, the county issued its response in five installments over the course of several months.

On February 19, 2015, Gipson received the second installment to his records request. This installment contained a series of heavily redacted invoices, along with a "Withholding Log," which explained that an additional 69 pages were being withheld due

to an active, ongoing investigation under RCW 42.56.250(5). A third installment was provided to Gipson on March 5, 2015, also notifying that an additional 298 pages were being withheld under the active and ongoing investigation exemption.

On April 22, 2015, Gipson was notified of a fourth installment for his records request. Believing it had provided all records requested by Gipson, the county closed the request stating:

> With regard to PRR 14-06701, the County claimed the attorney-client exemption and the exemption identified in RCW 42.56.250(5) for active and on-going investigations into allegations of employment discrimination. At the time your request was received, November 28, 2014, the employment discrimination investigation which was the subject of the request was still active and on-going. These records and the exemptions cited are not governed by the Court's decision in *Predisik* [*v. Spokane School District No. 81*, 182 Wn.2d 896, 346 P.3d 737 (2015)] because the County did not redact or withhold based on either RCW 42.56.230(3) or RCW 42.56.240(1). The County declines to change or remove the exemptions cited and the records withheld or redacted in response to PRR 14-06701.

CP at 140. Gipson responded that he had not received all documents requested, prompting the county to produce a fifth installment of records on May 4, 2015, that it had overlooked, and subsequently closed the request.[1]

In April 2016, Gipson filed a complaint in King County Superior Court seeking disclosure of the redacted records and statutory penalties under the PRA. The county filed a motion for summary judgment, arguing the county had a right to rely on the active and ongoing investigation exemption to each installment because it applied on the date the request was received. The trial court granted summary judgment, and Gipson

---

[1] It appears the first and fourth records request installments are not in dispute.

appealed. The Court of Appeals affirmed, holding that the exemption applied at the time the request was made and the county was not required to update its responses once the investigation ended. *See Gipson v. Snohomish County*, No. 76826-3-I (Wash. Ct. App. July 9, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/768263.pdf. Gipson petitioned this court for review, arguing the Court of Appeals' decision improperly applied the "no standing request" rule in *Sargent v. Seattle Police Department*, 167 Wn. App. 1, 260 P.3d 1006 (2011), *aff'd in part and rev'd in part on other grounds*, 179 Wn.2d 376, 314 P.3d 1093 (2013).[2] We granted review.

## ANALYSIS

The PRA was enacted to facilitate government transparency through the disclosure of public records. In furtherance of that goal, the PRA requires agencies to publish rules and regulations to promote ease of access for public records requests. *See* former RCW 42.56.040 (2014). Because the people have a right to remain informed of government instruments, this chapter's provisions are to be "liberally construed and its exemptions narrowly construed." Former RCW 42.56.030 (2014). The PRA requires agencies to "provide for the fullest assistance to inquirers and the most timely . . . action on requests for information." Former RCW 42.56.100 (2014). However, in certain circumstances, information is exempted from public inspection. *See* former RCW 42.56.250 (2014). Some of these exemptions may be time limited.

---

[2] Gipson also raised an equitable estoppel argument in this court due to the county's response to his records request. Pet. for Review at 4; Suppl. Br. of Pet'r at 15-20. This court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). As such, we decline to consider Gipson's equitable estoppel claim.

4

Gipson argues the appellate court here erred by extending the application of *Sargent* to this case. A discussion of the facts in that case is helpful to understand the applicability of *Sargent* to this case. In July 2009, the respondent in *Sargent* was under investigation for an altercation with an off-duty police officer. 167 Wn. App. at 7. He submitted a records request in August and September, which was denied due to an active and ongoing investigation. *Id.* The respondent was then asked to resubmit a records request in six to eight weeks. The investigation continued through the interim, and the investigator conducted his last witness interview in October 2009. Around this time, an internal investigation of the off-duty officer commenced. Later that month, the investigation was referred to the city attorney for prosecution. *Id.* The city declined to file charges in late 2009 or early 2010, and the respondent was notified of that decision. *Id.*

In February 2010, the respondent submitted a refresher request. *Id.* at 7-8. The police department provided redacted records, relying on the active and ongoing investigation exemption in March. *Id.* at 8. The internal investigation of the off-duty officer concluded in April 2010, and the respondent did not submit a new request for records at that time.

The respondent filed a complaint in King County Superior Court, alleging violations under the PRA. The trial court in that case agreed with the respondent and held that the records were no longer exempt after the investigation ended and that the city

was required to produce the records for the respondent that were previously exempted. *Id.* at 8-9. That decision was appealed.

In *Sargent* I, the Court of Appeals reversed and created a bright-line rule holding that "[t]he PRA does not provide for standing records requests. An agency is not required to monitor whether newly created or newly nonexempt documents fall within [such] a request to which it has already responded." *Id.* at 12. Pointing to the Washington State Bar Association's *Public Records Act Deskbook*, the court noted, "The [PRA] does not provide for 'continuing' or 'standing' requests. Instead, the comment suggests 'refresher' requests." *Id.* at 11 (footnote omitted) (quoting WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 5.3(3)(d) cmt. at 5-31 (2006)). Because the investigation was not referred to the city for prosecution until after the initial records requests were made, the city could claim the exemption, and the respondent was required to submit a refresher request after he was notified the investigation concluded.

Gipson argues that *Sargent* is inapt because, here, the active and ongoing investigation exemption was no longer applicable after February 2, 2015, and any installment produced after that date cannot be limited by that exemption. In essence, Gipson asks us to treat each installment as a new, independent request, and the county must determine whether there are any applicable exemptions at the time the installment is produced to the requester.

But installments are not new stand-alone requests. Rather, installments fulfill a single request and should be treated as such. With any request, the receiving agency determines any applicable exemptions *at the time* the request is received. Treating each installment as a new, single request would effectively permit standing requests because a requester is not required to submit a records request each time an installment is prepared. The agency prepares each installment based on the initial records request it receives. An agency is required to provide only records in existence at the time the request is made. An exempt record, like a nonexistent record, is not available for inspection, and an agency is not obligated to produce it. Should the exemption expire and the record come into "existence" after the initial request and determination, the onus is on the requester to make a "refresher request."

Holding otherwise runs counter to the Court of Appeals' rationale in creating the bright-line rule in *Sargent*. It would allow standing requests in cases where records requests require multiple installments because, with each installment, Gipson failed to submit a refresher request, relying instead on his initial request made in November 2014.

Such a reading of the PRA is unworkable. As Snohomish County correctly argued, this would effectively provide for a "standing request," which would treat requesters who are seeking limited information differently from those who request high volumes of records.[3] Under *Sargent*, if it were a single installment request that was

---

[3] *See* Wash. Supreme Court oral argument, *Gipson v. Snohomish County*, No. 96164-6 (Feb. 26, 2019), at 20 min., 20 sec. through 21 min., 34 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2019021552&autoStartStream

fulfilled while a limited exemption was in effect, the requester would be required to submit a new request when the exemption expired. In contrast, under Gipson's proposed rule, the requester whose voluminous request requires installments would not. Essentially, this would allow a "standing request" so long as the request is broad enough to require an agency several months and multiple installments to fulfill. *See* Wash. Supreme Court oral argument, *Gipson v. Snohomish County*, No. 96164-6 (Feb. 26, 2019), at 23 min., 0 sec. through 23 min., 20 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2019021552&autoStartStr eam=true. Only those who request large volumes of records stand to benefit from such a rule.

Contrary to Gipson's argument, applying *Sargent* to installment requests is not an improper extension of the "no standing requests" rule. The policy underlying the "no standing requests" rule is equally applicable to a voluminous request requiring multiple installments to fulfill. The Court of Appeals, in *Sargent*, rejected standing requests because "[n]othing in the language or history of the [PRA] indicates the legislature intended to impose on agencies an endless monitoring of old requests, or to require updated responses indefinitely to people who may have long since lost interest." 167 Wn. App. at 11. Further, agency regulations provide that "[a]n agency must only provide

---

=true.

access to public records in existence at the time of the request. An agency is not obligated to supplement responses." WAC 44-14-04004(4)(a).

We note that the *Public Records Act Deskbook* already has some guidance on this issue. It states that "[a]n agency has no duty to create a record in response to a request; only records existing at the time of the request must be provided." WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 5.1(4), at 5-8 (2d ed. 2014). Thus, it notes that "standing requests" act as a request for documents that may become available in the future. *See id.* Similarly, the determination of an exemption at the time the request was made is treated like a record that does not exist. Therefore, once "a temporal exemption expires after the request is made, the agency is not required to produce the record." *Id.*

Rather than requiring our state agencies to continuously monitor for any changes to the status of a claimed exemption, *Sargent*'s bright-line rule is reasonable, and we adopt it. Thus, we hold that a records request is satisfied when an agency receives a public records request, identifies a legitimate exemption under the PRA *at that time*, and clearly notifies the requester that the request will be treated in accordance with that exemption. This puts the requester on notice as to the nature of the exemption, and they can submit a "refresher request" after receiving an installment controlled by the claimed exemption, or when the exemption has expired, if the requester still wants those records.

Adopting this bright-line rule also furthers public policy. As Snohomish County correctly notes, assessing a request on the date it is received "insures the people's prompt,

9

efficient access to public records." Suppl. Br. of Resp't at 10. Many agencies have large volumes of public records requests. When receiving a request, the agency must identify responsive documents and any applicable exemptions, and estimate the time for response. Requiring the agency to continuously reevaluate a request to determine whether their original assessment regarding exemptions is still correct will only delay the production of the records request. By treating a request that must be fulfilled in installments as tantamount to a new request, if an agency realizes that a claimed exemption it relied on has expired, it will have to reproduce all of the information it previously released to comply with the public records request. Such an outcome will prove unwieldy and overburden many agencies that already deal with an enormous volume of records requests.

Snohomish County argues that requiring a requester to submit refresher requests would provide greater transparency between the agency and the requester, and while the county acknowledges doing so puts a greater burden on the agency to process more requests, "this is the preference" as "transparency is the goal [under the PRA]." Wash. Supreme Court oral argument, *supra*, at 23 min., 41 sec. through 24 min., 11 sec., and 24 min., 17 sec. through 25 min., 02 sec. We agree with the county's reasoning. Applying *Sargent* to voluminous requests will prevent agencies from allocating personnel to the task of continuously monitoring the status of a single expansive request while installments are pending. *See id.* at 30 min., 16 sec. through 30 min., 39 sec. This is the very thing that *Sargent* was trying to prevent.

When a requester is made aware of a temporal exemption applied to their records request, the deskbook recommends that the requester submit a separate "refresher request." PUBLIC RECORDS ACT DESKBOOK § 5.3(24), at 5-19 (2014). It also recommends that the "refresher request" should seek all records indicated in the initial request "from the date of the first request to the date of the refresher request." *Id.* Gipson's invitation to create a new rule antithetical to underlying policies of records requests is not well taken.

Snohomish County determined that an exemption existed at the time Gipson made his request. The county relayed this to Gipson via e-mail correspondence. *See* CP at 139-40. While Gipson argues he was dissuaded from submitting "refresher" requests, in part because he was provided "factually misleading information . . . that the investigation remained open and as a result the status of the requested records unchanged," that is immaterial. Suppl. Br. of Pet'r at 11-12. Admittedly, Snohomish County's e-mail may not have been a model of clarity. It "claimed the attorney-client exemption . . . for active and on-going investigations into allegations of employment discrimination." CP at 140. It did not state that it would continue to apply that exemption even after the investigations, then in progress, ended. Thus, it could have been more clear.

But, the PRA does not require agencies to inform the requester when an exemption expires. The act only requires agencies to inform the requester of any exemptions they claim. This provides notice to the requester so that the requester may submit a refresher request when they are aware that the claimed exemption has expired or after an

installment claiming that exemption is received. Regardless of Gipson's complaint regarding the e-mail correspondence, the PRA does not require an agency to do more than communicate any claimed exemptions to the requester. We hold that Snohomish County complied with the requirements of the PRA and that no violation occurred.

Attorneys Fees and Costs

Snohomish County has also moved for recovery of costs under RAP 14.3 and RCW 4.84.080. In ordinary civil actions, a "successful litigant may recover only such attorney fees as the statute or agreement of the parties provides." *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 102, 111 P.2d 612 (1941) (citing *Easterbrooks v. Abrahams*, 200 Wash. 636, 94 P.2d 486 (1939)). RCW 4.84.080(2) provides that where "judgment is rendered" by an appellate court in a civil proceeding, the prevailing party is awarded $200. We note that the appellate court determines costs "in all cases after the filing of a decision terminating review." RAP 14.1(a). The appellate court making the final determination decides whether to awards costs and fees on review. RAP 14.1(c). If we determine costs and fees are warranted, the court "commissioner or clerk" will determine the award by ruling. *Id.* Because Snohomish County moved for fees in the lower court and prevails on appeal, we award costs to be determined by the court clerk.

CONCLUSION

Although the goal of the PRA is to facilitate government transparency in a timely and efficient manner, the PRA "does not require that agencies provide updates to previous responses, or monitor whether documents properly withheld as exempt may

12

later become subject to disclosure." *Sargent*, 167 Wn. App. at 10-11. An agency is not required to maintain constant vigilance of any exemptions it asserts when the request is first received, regardless of whether the records request requires a single installment or multiple installments to satisfactorily fulfill. We affirm.

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Owens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._

*Gipson v. Snohomish County*
(Stephens, J., dissenting)

No. 96164-6

STEPHENS, J. (dissenting)—This case arises under the Public Records Act (PRA), chapter 42.56 RCW. Ron Gipson requested records relating to workplace sexual harassment allegations against him, which were under investigation at the time of his request. Snohomish County (County) responded to Gipson's request in installments over the course of several months, invoking the exemption in RCW 42.56.250(5)[1] for "active and ongoing" employment investigations to withhold the investigative records. The County continued to rely on this exemption after the investigation had concluded, reasoning that its obligations were fixed on the date it received Gipson's request rather than on the dates it released records. We are asked

_____

[1] When Gipson filed his complaint in 2016 the exemption at issue was codified as RCW 42.56.250(5). Today, the same exemption, with no change in wording, is codified as RCW 42.56.250(6) and will remain effective until July 1, 2019. To maintain consistency with the parties' briefing and lower court opinions, this opinion cites the applicable exemption as RCW 42.56.250(5).

to decide whether the County violated the PRA in taking this approach. To answer this question, we must consider the reach of the "no standing requests" rule first articulated by the Court of Appeals in *Sargent v. Seattle Police Department*, 167 Wn. App. 1, 260 P.3d 1006 (2011) (*Sargent* I), *aff'd in part and rev'd in part on other grounds*, 179 Wn.2d 376, 314 P.3d 1093 (2013) (*Sargent* II), specifically whether the PRA allows an agency to, in effect, "freeze" its disclosure obligations on the date it receives a PRA request.

I would hold that the PRA does not authorize withholding public records based on an *expired* temporary exemption. Because the PRA is "a strongly worded mandate for broad disclosure of public records," *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978), its provisions "must be 'liberally construed and its exemptions narrowly construed' to ensure that the public's interest is protected," *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011) (quoting RCW 42.56.030). The legislature expressly limited the exemption in RCW 42.56.250(5) to "active and ongoing" employment investigations. Allowing an agency to continue asserting this exemption after an investigation has concluded runs counter to the statutory mandate to provide "the *fullest assistance* to inquirers and the *most timely* possible action on requests for information." RCW 42.56.100 (emphasis added).

Rather than construing this purpose liberally and the PRA's exemptions narrowly, today's majority turns this statutory command on its head. The majority takes *Sargent* I's rule against "standing requests" and applies it to still-pending requests, reasoning that requiring agencies to adjust the scope of ongoing disclosures when an exemption expires would be "unwieldy and . . . overburden[some]." Majority at 10. But logistical challenges do not, in my view, justify responding to a pending request by inaccurately asserting a no-longer-applicable exemption. Agencies must comply with the law, even when compliance is inconvenient and burdensome. Because the majority's reasoning runs contrary to the PRA's mandate for full and timely disclosure of public records, I respectfully dissent.

BACKGROUND AND PROCEDURAL HISTORY

In 2014, Gipson became the subject of several sexual harassment allegations relating to his employment as a corrections officer at the Snohomish County Denney Juvenile Justice Center. Gipson was also the longest-serving member of the Everett City Council and was up for reelection in the fall of 2015. The investigation of these allegations was overseen by the County's human resources department and was conducted by an outside investigator, Marcella Fleming Reed (referred to by the parties as the MFR investigation).

On December 1, 2014,[2] the County received a public records request from Gipson for "all records which in any way mentions the name Ron Gipson as it relates to this [public records request]." Clerk's Papers (CP) at 47-48, 52-56. The County assigned this request tracking number 14-06701. Because the request contained a large number of documents, the County issued its response in five installments over the course of several months.

The MFR investigation into the sexual harassment allegations against Gipson concluded on February 2, 2015. In his complaint, Gipson states that (presumably, as a subject of the investigation) he was notified of the investigation's closure through several letters, "which state that the subject EEO [equal employment opportunity] complaints were in fact closed and that there were no active nor ongoing investigations." CP at 5. These letters are referenced but not included in the record on appeal.

On February 19, 2015, after the MFR investigation closed, Gipson received the second installment in response to his records request.[3] This installment contained a series of heavily redacted invoices from the MFR investigation and an exemption

---

[2] There is some discrepancy in the record regarding the date of Gipson's initial records request, with some documents listing the date as November 28, 2014. *See, e.g.,* CP at 52. The variance is not material to the analysis in this opinion, and we use the most commonly referenced date, December 1, 2014.

[3] The production of records provided in the first and fourth installments are not at issue in this case.

log that explained an additional 69 pages were being withheld as part of an active, ongoing investigation pursuant to RCW 42.56.250(5). A third installment, received March 5, 2015, also contained an exemption log listing 298 pages of records withheld under the same exemption.

On April 22, 2015, the County attempted to close request 14-06701 by sending Gipson an e-mail stating:

> All records will have been provided with this fourth installment and this request will be closed.
> With regard to PRR 14-06701, the County claimed the attorney-client exemption and the exemption identified in RCW 42.56.250(5) for active and on-going investigations into allegations of employment discrimination. At the time your request was received, November 28, 2014, the employment discrimination investigation which was the subject of the request was still active and on-going. These records and the exemptions cited are not governed by the Court's decision in *Predisik* [*v. Spokane School District No. 81*, 182 Wn.2d 896, 346 P.3d 737 (2015)] because the County did not redact or withhold based on either RCW 42.56.230(3) or RCW 42.56.240(1). The County declines to change or remove the exemptions cited and the records withheld or redacted in response to PRR 14-06701.

CP at 139-40. Gipson responded to this e-mail by stating that he had not received a complete set of the documents requested and, as a result, he still considered request 14-06701 to be open. This prompted the County to issue the fifth installment on May 4, 2015, which contained additional invoices, and to then close the request.

With the release of each installment after the second, the County reasserted the active and ongoing investigation exemption in RCW 42.56.250(5) and failed to reevaluate or make any determination as to whether the exemption applied after the

investigation was closed. Answer to Pet. for Review at 7. Gipson alleged that he lost the election in 2015 because he was unable to obtain the requested records in a timely manner and repudiate a negative article in the *Everett Herald* regarding the sexual harassment allegations. Pet. for Review at 18.

In February 2016, Gipson submitted a new request (tracking number K006705), seeking invoices and other documents from the MFR investigation. At the initiation of litigation, the County's response to this request was still pending.

Gipson filed the complaint in this case in King County Superior Court in April 2016, seeking disclosure of the requested records and statutory penalties authorized by the PRA. In response, the County filed a motion for summary judgment, alleging that it had the right to rely on RCW 42.56.250(5) in responding to Gipson's initial records request because the exemption applied on the date the request was received. The superior court granted summary judgment, concluding that the Court of Appeals opinion in *Sargent* I "created a bright line rule that there are no standing requests and that exemptions are applied as of the date of a request." CP at 397. Gipson appealed and the Court of Appeals, Division One, affirmed. *Gipson v. Snohomish County*, No. 76826-3-I, slip op. at 6-7 (Wash. Ct. App. July 9, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/768263.pdf.

Gipson petitioned this court for review, asserting that the Court of Appeals decision reflects an improper extension of the "no standing requests" rule in *Sargent* I.[4]

## ANALYSIS

Washington's PRA is a strongly worded mandate for disclosure of public records, aimed to ensure the people of the state remain informed, "so that they may maintain control over the instruments that they have created." RCW 42.56.030. Exemptions under the act must be narrowly construed "to assure that the public interest will be fully protected." *Id.* Judicial review of agency actions taken or challenged under the PRA is de novo. RCW 42.56.550(3). "While agencies have some discretion in establishing procedures for making public information available, the provision for de novo review confirms that courts owe no deference to agency interpretations of the [PRA] but are charged with determining when a duty to disclose exists and whether a statutory exemption applies." *Zink v. City of Mesa*, 140 Wn. App. 328, 335, 166 P.3d 738 (2007).

---

[4] Gipson also raised an equitable estoppel argument in this court based on the County's actions in responding to his records requests. Pet. for Review at 4; Suppl. Br. of Pet'r at 15-20. Because this court has discretion to refuse to review "any claim of error which was not raised in the trial court," RAP 2.5(a), we decline to consider Gipson's equitable estoppel claim.

At issue in this case is the County's application of the employment investigation exemption found in RCW 42.56.250(5). That provision temporarily exempts "[i]nvestigative records compiled by an employing agency conducting an active and ongoing investigation of a possible unfair practice under chapter 49.60 RCW or of a possible violation of other federal, state, or local laws prohibiting discrimination in employment." The plain language of this exemption restricts its application to *active and ongoing* investigations; it does not exempt materials relating to completed investigations. In determining whether an exemption applies, "[t]he burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.56.550(1). In my view, the County failed to meet its burden, particularly in light of the PRA's mandate for broad public disclosure.

> A. The "No Standing Requests" Rule of *Sargent* I Does Not Authorize an Agency To Assert an Expired Temporary Exemption To Withhold or Redact Records in Response to a Pending Public Records Request

The PRA does not directly address the question whether an agency may continue to withhold or redact public records based on an expired temporary exemption that was effective at the initiation of a records request. No statute expressly dictates how an agency should implement a temporary exemption if it

ceases to apply when the agency is still processing a PRA request. While the PRA provides agencies with latitude to fill in statutory gaps and "adopt and enforce reasonable rules and regulations," it mandates that "[s]uch rules and regulations shall provide for the *fullest assistance* to inquirers and the *most timely* possible action on requests for information." RCW 42.56.100 (emphasis added). This statutory mandate provides the guiding principle for my analysis and conclusion that an agency may not continue to rely on a temporary exemption beyond the time frame the legislature has specified.

Today's majority takes a contrary view, expanding the rule against "standing requests" articulated in *Sargent* I to cover "voluminous request[s] requiring multiple installments to fulfill." Majority at 8. It argues that because "many agencies . . . already deal with an enormous volume of records requests," a rule "[r]equiring [an] agency to continuously reevaluate a request to determine whether their original assessment regarding exemptions is still correct . . . will prove unwieldy." *Id.* at 10. So the majority holds that because there was an ongoing employment investigation when Gipson submitted his records request on December 1, 2014, the County could continue to assert RCW 42.56.250(5) throughout its disclosure of records in installments, even with respect to installments not released until several months after the investigation concluded. *Id.* at 8.

-9-

A brief examination of the facts in *Sargent* I is helpful to understand why the majority's reliance on its "no standing requests" rule is incorrect. In *Sargent* I, the primary issue was "whether a request for public records has indefinite effect, such that after an agency has responded to a request, it must monitor the status of all records within the request and disclose any that later become subject to disclosure."[5] *Sargent* I, 167 Wn. App. at 6. The case involved two PRA requests (submitted August 31 and September 1, 2009) for records regarding an altercation between Evan Sargent and an off-duty Seattle police officer. *Id.* at 7. Approximately one week after Sargent submitted his requests, the city responded that his request was denied because the requested documents were exempt under RCW 42.56.240(1) (effective law enforcement investigation exemption), and the city suggested that Sargent resubmit his request in six to eight weeks. *Id.*

In February, Sargent resubmitted and clarified his request. *Id.* at 7-8. The city responded by disclosing some records but again suggested that Sargent resubmit his request in four to six weeks because it was withholding the officer's disciplinary file due to an open and active investigation. *Id.* at 8. The investigation closed in

---

[5] When *Sargent* I was subsequently considered in this court, the issue was the "proper scope of the effective law enforcement exemption of the [PRA]," specifically whether the exemption applies categorically. *Sargent* II, 179 Wn.2d at 381. Our opinion contains no discussion of the duration of the exemption. *See id.*

April 2010, and at that time, Sargent elected not to submit a new request for the records. *Id.*

Sargent contended that his August and September PRA requests remained pending throughout, so that the city had the burden to "search out and disclose additional records if the basis for a claimed exemption ceases to apply." *Id.* at 10. Relying on a Washington State Bar Association *Public Records Act Deskbook* comment indicating the PRA does not provide for "'continuing'" or "'standing'" requests, the appeals court rejected this argument. *Id.* at 11; *see also* WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 5.1(4), at 5-8 (2d ed. 2014).[6] The court articulated the following rule: "An agency is not required to monitor whether newly created or newly nonexempt documents fall within a request *to which it has already responded.*" *Sargent* I, 167 Wn. App. at 12 (emphasis added).

The main distinction between *Sargent* I and this case is immediately apparent. In *Sargent* I, the city had responded in full and closed the request while the

---

[6] Because *Sargent* I was decided in 2011, the court used the 2006 version of the Washington State Bar Association's *Public Records Act Deskbook: Washington's Public Disclosure and Open Public Meeting Laws. Sargent* I, 167 Wn. App. at 9 n3. In 2014, the Washington State Bar Association released the second edition of the *Public Records Act Deskbook*, which replaced the 2006 first edition and the 2010 supplement. To avoid confusion and ensure the most current guidance is considered, unless otherwise noted, all original citations to the *Deskbook* in this opinion are to the 2014 second edition.

investigation was ongoing, and thus its invocation of the exemption was contemporaneous with its response to the records request. *Sargent* I, 167 Wn. App. at 8. In contrast, here, the County elected to provide records in response to Gipson's PRA request in several installments, and the investigation concluded well before its response was complete. CP at 47-49, 139-40. Stated differently, Gipson's PRA request remained "open" from the County's point of view, and it could not say here, as in *Sargent* I, that it had "already responded." 167 Wn. App. at 12.

Another distinction between *Sargent* I and the case at hand highlights the likely consequences of the majority's decision. In *Sargent* I, the city responded to the PRA request by asserting the exemption and recommending a timeline for the requester to resubmit his request. Upon resubmittal, the city provided some records and asserted different applicable exemptions for certain records that remained undisclosed. *Sargent* I, 167 Wn. App. at 7-9. Here, in contrast, the County acknowledges that, even though it compiled and produced some installments of records after the conclusion of the investigation, it never reevaluated Gipson's request or made any new determination as to which exemptions applied. Answer to Pet. for Review at 7. The County simply relied on *Sargent* I to assert any exemptions that applied on December 1, 2014. Going forward, other government agencies may well rely on today's decision to avoid disclosing records that were temporarily

exempted at the time a request was received, even though they know the exemption does not apply at the time of disclosure. This result runs counter to the PRA's direct command to construe its provisions liberally and its exemptions narrowly. RCW 42.56.030.

Today's majority disregards this command and instead adopts the broad reading of *Sargent* I suggested in some secondary authorities. *Id.* For example, the *Public Records Act Deskbook,* relied on by the appeals court in *Sargent* I, reads the PRA as allowing agencies to determine their obligations based on the date a request is first received. *See* PUBLIC RECORDS ACT DESKBOOK § 5.1(4), at 5-8. Even so, the *Deskbook* advises agencies to disclose records once a temporary exemption expires:

> **[§ 5.1](4) Only existing records may be requested**
> . . . A requestor cannot make a "standing request" for records that may become available in the future. *Sargent v. Seattle Police Dep't,* 167 Wn. App. 1, 260 P.2d 1006 (2011), *aff'd in part, rev'd in part on other grounds,* 179 Wn.2d 376, 314 P.3d 1093 (2013). Likewise, the determination of whether a record is exempt is made at the time the request is received. If, for example, a temporal exemption expires after the request is made, the agency is not required to produce the record; but the record must be identified on an exemption log, *and as a practical matter it may be advisable for the agency to produce the record if it has not yet closed the request.*

*Id.* (emphasis added).

Similarly, the attorney general's model rules[7] suggest a broad reading of *Sargent* I, at least insofar as responding to requests in the context of existing versus future-acquired records:

> **WAC 44-14-04004(4)(a) When the agency does not have the record.** An agency is only required to provide access to public records it has or has used. An agency is not required to create a public record in response to a request.
>
> An agency must only provide access to public records in existence at the time of the request. An agency is not obligated to supplement responses. Therefore, if a public record is created or comes into the possession of the agency after the request is received by the agency, it is not responsive to the request and need not be provided. A requestor must make a new request to obtain subsequently created public records.

(Footnote omitted.)

While it stands to reason that agencies might rely on such guidance to essentially "freeze" their obligations on the date a request is received, I believe this reflects an inappropriately broad reading of *Sargent* I's "no standing requests" rule. Though deskbooks, WACs, and decisions of the Court of Appeals may be persuasive

---

[7] The PRA states that

[t]he attorney general, by February 1, 2006, shall adopt by rule advisory model rules for state and local agencies, as defined in RCW 42.56.010, addressing the following subjects:

    (a) Providing fullest assistance to requestors;
    (b) Fulfilling large requests in the most efficient manner;
    (c) Fulfilling requests for electronic records; and
    (d) Any other issues pertaining to public disclosure as determined by the attorney general.

RCW 42.56.570(2).

to this court, none can overcome the PRA's express mandate to provide "the *fullest assistance* to inquirers and the *most timely* possible action on requests for information." RCW 42.56.100 (emphasis added). By relying on these nonbinding sources of authority, today's majority undermines the PRA's "strongly worded mandate for broad disclosure of public records." *Hearst Corp.*, 90 Wn.2d at 127.

Instead, I would take this opportunity to clarify the limited reach of *Sargent* I's rule: it does not reduce an agency's disclosure obligations while an *open public records request* is being fulfilled. The basic principle that "[a]n agency is not required to monitor whether newly created or newly nonexempt documents fall within a request to which it has *already responded*" should remain good law. *Sargent* I, 167 Wn. App. at 12 (emphasis added). However, this rule's application ought to be limited to the time period following an agency's *completed* response, when the agency and the requester consider the request to be *closed*.

Because this case involves an open PRA request where the County was in the process of responding, its practices must adhere to the overarching mandate of the PRA: to "provide for the *fullest assistance* to inquirers and the *most timely* possible action on requests for information." RCW 42.56.100 (emphasis added). As I explain below, this mandate precluded the County from continuing to assert the temporary employment investigation exemption beyond the time frame authorized

in the exemption itself. The exemption applies only when an agency is "conducting an active and ongoing investigation." RCW 42.56.250(5). Once the MFR investigation concluded, the PRA obligated the County to reevaluate Gipson's unfulfilled request rather than to reassert the expired exemption as if it were still applicable.

> B. Because the County Was Required by the PRA To Provide the "Fullest Assistance" and Take the "Most Timely Action" on Gipson's Public Records Request, It Could Not Assert RCW 42.56.250(5) as a Basis To Withhold Records after the MFR Investigation Concluded

The employment investigation exemption in RCW 42.56.250(5) is self-limiting. It authorizes withholding "[i]nvestigative records compiled by an employing agency conducting an active and ongoing investigation of a possible unfair practice under chapter 49.60 RCW or of a possible violation of other federal, state, or local laws prohibiting discrimination in employment." RCW 42.56.250(5). Because the legislature has carefully delineated the temporal scope of this exemption, neither courts through their decisions nor agencies through their implementation of the PRA may expand it. Instead, our responsibility is to interpret the exemption narrowly to align with the PRA's mandate that agencies provide the "fullest assistance" and take "the most timely possible action" in response to public records requests. RCW 42.56.100. While I am not insensitive to the administrative efficiencies that may be served by allowing agencies to identify a "date certain" for

purposes of planning large-scale public record responses, the PRA places a high value on providing the fullest and most timely disclosure to requesters.

Agencies are certainly free to map out their plan for responding to a records request based on the date a request is received, and they may, of course, elect to disclose responsive records in multiple installments over time. As part of providing full assistance and a timely response to public records requests, agencies are expected to communicate with requesters and articulate the basis for any asserted exemptions. Communications between the requester and the agency are essential so that the agency can fulfill a PRA request in the most complete and efficient manner possible. When circumstances change during the time a public records request is being processed, the PRA contemplates that agencies will take a service-oriented approach in communicating with the requester. In some instances, the requester may elect to proceed with the original request, even though this may result in receiving partial or redacted information. In other cases, the requester may prefer to make a new request. Either way, the PRA requires agencies to follow a process that best serves the public policy of open government.

The problem in this case is that the County continued to assert the exemption in RCW 42.56.250(5) as if the employment investigation were active and ongoing, rather than communicating with Gipson and reevaluating its response to his public

records request. This was not a "standing request," as in *Sargent* I, but an active, open request to which the County was still responding. By its plain terms, the temporary employment investigation exemption expired once the MFR investigation concluded and no longer provided a basis for the County to withhold records in response to Gipson's pending request.

## CONCLUSION

Clear communication between agencies and public records requesters is essential to fulfilling the objectives of the PRA and ensuring that the citizens of Washington "maintain control over the instruments that they have created." RCW 42.56.030. Today's majority errs by extending the "no standing requests" rule of *Sargent* I to justify the County's assertion of an expired temporary exemption under RCW 42.56.250(5) as a basis for withholding public records. While I appreciate the logistical challenges agencies face in responding to public records requests, the law prioritizes public disclosure over government convenience and compels "the fullest assistance to inquirers and the most timely possible action on requests for information," RCW 42.56.100. Out of respect for PRA's broad mandate of public disclosure, I respectfully dissent.

Stephens, J.